COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

MAKE THE ROAD STATES INC

vs.

FREDERICK A HARRAN

NO. 2025-04200

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Bucks County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: Stephen Allen Loney Jr., Esq., ID: 202535

Self-Represented (Pro Se) Litigant [ ]

**Class Action Suit** [ ] Yes [X] No

**MDJ Appeal** [ ] Yes [X] No

**Money Damages Requested** [ ]

**Commencement of Action**:

Complaint

**Amount in Controversy**:

### Case Type and Code

Miscellaneous:

Declaratory Judgment

**Other:**

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stephen Allen Loney Jr., Esq.

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Bucks County

| For Prothonotary Use Only: | TIME STAMP |
|---|---|
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**

- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name: MAKE THE ROAD STATES, INC.

Lead Defendant's Name: FREDERICK A. HARRAN

**Are money damages requested?** [ ] Yes [x] No

Dollar Amount Requested: (check one) [ ] within arbitration limits [ ] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes [x] No

**Is this an *MDJ Appeal*?** [ ] Yes [x] No

Name of Plaintiff/Appellant's Attorney: ACLU of Pennsylvania, Community Justice Project

[ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.*** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [ ] Other:

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**

Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [x] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

Stephen A. Loney, Jr. (No. 202535)
Ariel Shapell (No. 330409)
Keith Armstrong (No. 334758 )
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
215-592-1513
sloney@aclupa.org
ashapell@aclupa.org
karmstrong@aclupa.org

Marielle Macher (No. 318142)
Daniel Vitek (No. 209013)
COMMUNITY JUSTICE PROJECT
118 Locust Street
Harrisburg, PA 17101
717-236-9486, ext. 214
mmacher@cjplaw.org
dvitek@cjplaw.org

*Counsel for Plaintiffs*

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY**
**CIVIL DIVISION**

| | |
|---|---|
| MAKE THE ROAD STATES, INC., NAACP BUCKS COUNTY BRANCH 2253, BUXMONT UNITARIAN UNIVERSALIST FELLOWSHIP, and JUAN NAVIA, | Docket No. ____________________ |
| *Plaintiffs* | CIVIL ACTION |
| vs. | |
| FREDERICK A. HARRAN, individually and in his official capacity as Sheriff of Bucks County, and BUCKS COUNTY, | |
| *Defendants.* | |

## NOTICE TO DEFEND

**To Frederick A. Harran and Bucks County:**

You have been sued in court. If you wish to defend against the claims set forth in the following pages you must take action within twenty (20) days after this complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE GO TO OR TELEPHONE THE OFFICES SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Bucks County Bar Association
135 East State Street
Doylestown, PA 18901
Phone (215) 348-9413, 1-800-479-8585
www.bucksbar.org

PA Bar Association: www.pabar.org

*/s/Stephen A. Loney, Jr.*
Attorney for Plaintiffs

Attorney I.D. # 202535
Stephen A. Loney, Jr.
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

Stephen A. Loney, Jr. (No. 202535)
Ariel Shapell (No. 330409)
Keith Armstrong (No. 334758)
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
215-592-1513
sloney@aclupa.org
ashapell@aclupa.org
karmstrong@aclupa.org

Marielle Macher (No. 318142)
Daniel Vitek (No. 209013)
COMMUNITY JUSTICE PROJECT
118 Locust Street
Harrisburg, PA 17101
717-236-9486
mmacher@cjplaw.org
dvitek@cjplaw.org

*Counsel for Plaintiffs*

| | |
|---|---|
| MAKE THE ROAD STATES, INC., NAACP BUCKS COUNTY BRANCH 2253, BUXMONT UNITARIAN UNIVERSALIST FELLOWSHIP, and JUAN NAVIA<br><br>*Plaintiffs*<br><br>vs.<br><br>FREDERICK A. HARRAN, individually and in his official capacity as Sheriff of Bucks County, and BUCKS COUNTY,<br><br>*Defendants.* | Docket No. ____________________<br><br>CIVIL ACTION |

Plaintiffs Make the Road States, Inc. d/b/a Make the Road Pennsylvania ("Make the Road PA"), NAACP Bucks County Branch 2253 ("NAACP Bucks"), BuxMont Unitarian Universalist Fellowship ("BuxMont UU"), and Juan Navia, by and through their undersigned counsel, bring this action pursuant to the Pennsylvania Intergovernmental Cooperation Act ("ICA"), 53 Pa.C.S. §§ 2301-2317; Article 9, Section 5 of the Pennsylvania Constitution; and the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, seeking declaratory and injunctive relief to prevent

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

Defendant Frederick A. Harran ("Sheriff Harran") from implementing an illegal, *ultra vires* agreement entered into with the United States Immigration and Customs Enforcement Agency ("ICE") without the required authorization of Bucks County's ("County") governing body. In support of this action, Plaintiffs aver as follows:

## NATURE OF THE ACTION

1. Sheriff Harran unilaterally signed an agreement with ICE, which on information and belief, purports to dedicate County resources, personnel, and taxpayer funds to perform federal immigration enforcement duties normally reserved for federal ICE agents. Such agreements are commonly referred to as "287(g) agreements," referencing subsection 287(g) of the Immigration and Nationality Act, 8 U.S.C. § 1357(g).

2. Through 287(g) agreements, ICE seeks to deputize local law enforcement personnel to carry out ICE's immigration enforcement goals by investigating, apprehending, and detaining non-citizens at ICE's direction, and under the ultimate supervision of the Secretary of the United States Department of Homeland Security. 287(g) agreements require local authorities to take on these federal functions at the local municipality's expense.

3. Such agreements accomplish little more than syphoning important County resources, already stretched thin, to serve the goals of the federal immigration enforcement agency while eroding "the hard-won trust, communication and cooperation from the immigrant community,"[1] ultimately undermining public safety at the local level. Such agreements have been proven to open the door to harmful and insidious racial profiling, poor jail conditions, and other

[1] M.C.C. Immigration Committee, *M.C.C. Immigration Committee Recommendations for Enforcement of Immigration Laws By Local Police Agencies*, MAJOR CITIES CHIEFS ASSOCIATION, June 6, 2006, available at https://images.procon.org/wp-content/uploads/sites/40/recommendationsforenforcementofimmigrationlawsbylocalpoliceagencies.pdf.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

civil rights violations,[2] all of which expose the County and its taxpayers to liability. Entering into such an agreement in Bucks County would be contrary to County leadership's express decision to leave federal immigration enforcement to federal authorities in light of its determination that "entering into a 287(g) agreement with ICE is not an appropriate use of Bucks County taxpayer resources given the unfunded nature of this program and the potential for liability."[3]

4. Sheriff Harran signed this agreement to hand supervision of County officers to federal authorities, to increase strain on County resources, and to divert Sheriff's Office personnel and resources away from its core duties, without seeking or obtaining County Commissioner approval for this intergovernmental cooperation agreement, as is expressly required by the ICA, 53 Pa.C.S. §§ 2301-2307.

5. Indeed, when the County Board of Commissioners ("County Board") learned of Sheriff Harran's unilateral attempt to bind a County office to a 287(g) agreement, rather than passing the type of ordinance or resolution that would authorize the Sheriff to enter into such a cooperation agreement, the Commission passed a resolution specifically disavowing the purported agreement as "unauthorized" and "not approved or delegated for approval by the Board of Commissioners." *See* Ex. A at 2.

---

[2] *See* ACLU Research Report, *License to Abuse: How ICE's 287(g) Program Empowers Racists Sheriffs and Civil Rights Violations*, AMERICAN CIVIL LIBERTIES UNION, April 26, 2022, available at https://www.aclu.org/publications/license-abuse-how-ices-287g-program-empowers-racist-sheriffs.

[3] A true and correct copy of the May 21, 2025 "RESOLUTION OF THE COUNTY OF BUCKS, COMMONWEALTH OF PENNSYLVANIA, REGARDING BOARD OF COMMISSIONER AUTHORITY OVER CONTRACTUAL AGREEMENTS WITH THE U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT" is attached hereto as "Exhibit A."

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

6. Sheriff Harran has refused to heed the direction of the County Board, instead defiantly proceeding to implement an agreement that is *ultra vires* and void as a matter of Pennsylvania law.

7. Absent an injunction, Plaintiffs will be irreparably harmed, as Sheriff Harran will proceed to commit County officers to harmful federal immigration enforcement activities, at the expense of the Bucks County taxpayers and to the detriment of the Sheriff's core duties, which the Sheriff's Office is obligated to perform for all County residents, including non-citizen residents and immigrant communities.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action for declaratory and injunctive relief pursuant to 42 Pa.C.S. §§ 931(a) and 7532.

9. Venue is proper in this Court, as the subject matter of this litigation arises within the boundaries of Bucks County, Pennsylvania and involves the conduct of Bucks County officials.

## PARTIES

10. Plaintiff Make the Road PA is a non-profit, membership-based organization formed in 2014 that builds the power of the working-class in Latino/a and other communities to achieve dignity and justice through organizing, policy innovation, and education services. Make the Road PA has members throughout Pennsylvania, including Bucks County. Make the Road PA brings this litigation on behalf of its Bucks County members, who are all people of Latino/a descent and who fear racial profiling if Sheriff Harran's 287(g) agreement goes into effect allowing local law enforcement authorities to conduct warrantless interrogations, arrests, and detentions based on the suspicion or belief that someone is a non-citizen. Make the Road PA's members in Bucks County possess identities that, based on the findings of the U.S. Department of Justice, have been subject

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

to increased profiling by local law enforcement authorities empowered to conduct warrantless searches, arrests, and detentions of those they believe to be non-citizens under 287(g) agreements.[4]

11. Plaintiff NAACP Bucks is a non-profit, non-partisan organization whose mission is to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color. It works to improve the political, educational, social, and economic status of African-Americans and other racial and ethnic minorities, to eliminate racial prejudice, and to take lawful action to secure the elimination of racial discrimination, among other objectives. NAACP Bucks has hundreds of members who are subject to the jurisdiction of the Bucks County Sheriff's Office, including at least 7% of whom are non-citizens or of Latino/a descent. NAACP Bucks members and other people of color it serves possess identities that, based on the findings of the U.S. Department of Justice, have been subject to increased profiling by local law enforcement authorities empowered to conduct warrantless searches, arrests, and detentions of those they believe to be non-citizens under 287(g) agreements. Sheriff Harran's 287(g) agreement with ICE has already caused NAACP Bucks to divert time and resources to advocacy and education efforts surrounding this agreement and the rights of impacted Bucks County residents. And if Sheriff Harran's 287(g) agreement goes into effect, allowing local law enforcement authorities to conduct warrantless interrogations, arrests, and detentions based on the suspicion or belief that someone is a non-citizen, NAACP Bucks will have to expend additional

[4] The results of the Department of Justice's investigation into the Maricopa County, Arizona Sheriff's Office's conduct under its 287(g) agreement can be found at *Maricopa County Sheriff's Office Findings Letter*, U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION (Dec. 15, 2011), https://www.justice.gov/sites/default/files/crt/legacy/2011/12/15/mcso_findletter_12-15-11.pdf.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

time and resources addressing increased complaints of racial profiling and police misconduct impacting people of color in Bucks County.

12. Plaintiff BuxMont UU is a non-profit religious congregation based in Warrington, PA, a township in Bucks County. BuxMont UU's mission includes serving the social and spiritual needs of its members; creating a nurturing religious community; and promoting care, respect, and dignity for all people, both inside and outside the church. The BuxMont UU congregation includes immigrants, congregants with immigrant family members, and people of color who possess identities that expose them to an increased risk of being profiled for citizenship status. Sheriff Harran's unilateral attempt to enter into a 287(g) agreement will frustrate BuxMont UU's mission and force BuxMont UU to divert resources by placing BuxMont UU's members and constituents in fear of warrantless detentions and interrogations of themselves and/or their family and religious community members, requiring BuxMont UU's staff to devote substantial time and resources to delivering pastoral and spiritual care to impacted members and constituents. Devoting staff time to such additional pastoral and spiritual care will take away from BuxMont UU's resources to work on other congregational priorities, such as its routine religious services and education. Sheriff Harran's unlawful 287(g) agreement also frustrates BuxMont UU's religious mission. BuxMont UU's religious mission includes a "covenant to dismantle racism and all forms of systemic oppression." *Our Covenant, Vision, Mission and Values*, BUXMONTUU, https://buxmontuu.org/home/im-new-2/our-covenant-vision-and-mission/. Implementation of Sheriff Harran's 287(g) agreement would frustrate BuxMont UU's mission, because the enforcement of 287(g) agreements has historically led to racial profiling and civil rights violations against racial and ethnic minorities. BuxMont UU's religious mission also "support[s] the use of inclusive democratic processes to make decisions within … society at large." *Id.* This aspect of

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

BuxMont UU's mission is frustrated by Sheriff Harran's undemocratic execution of the 287(g) agreement without approval of the duly elected Board of Commissioners. BuxMont UU's religious mission also includes a "declar[tion] that every person is inherently worthy and has the right to flourish with dignity, love, and compassion." *Id.* Sheriff Harran's unlawful 287(g) agreement threatens to frustrate BuxMont UU's mission because it will lead to the targeting and profiling of people based on perceptions of their race and national origins.

13. Plaintiff Juan Navia is a Bucks County resident, voter, and taxpayer. Mr. Navia voted in the most recent Bucks County Commissioners election and thus has an interest in seeing the will of County voters honored by allowing the duly elected County Board decide for the County whether to enter into intergovernmental cooperation agreements. Mr. Navia also has a vested interest in proper use of the County's tax dollars and is thus harmed by Sheriff Harran's unilateral decision to dedicate County funds to federal immigration enforcement priorities. Moreover, though Mr. Navia is a U.S. citizen, he is at increased risk of profiling, as a person of color and of Latino descent with a Latino surname, if Sheriff Harran's 287(g) agreement goes into effect allowing local law enforcement authorities to conduct warrantless interrogations, arrests, and detentions based on the suspicion or belief that someone is a non-citizen.

14. Defendant Frederick A. Harran is the Sheriff of Bucks County. In that capacity, he is the head of the County Sheriff's Office. As County Sheriff, Sheriff Harran is a local law enforcement officer responsible for maintaining peace and order and upholding the law in the County. He is responsible under Pennsylvania law for, among other things, serving criminal warrants and civil process, ensuring security in Bucks County courts, transporting criminal defendants for court appearances, enforcing court-ordered commitments of incarceration, administering court-ordered property sales, gun permitting, issuing licenses and processing

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

applications for licenses to carry firearms, and enforcing other judicial mandates from the Bucks County courts. For example, at any given time, the Sheriff's Office has thousands of outstanding warrants to serve. As of January 2025, the County Sheriff's Office reportedly had 6,626 outstanding warrants, a number that had decreased by just 1,174 since 2022. Tom Sofield, *Sheriff Reports Progress In Reducing Number Of Warrants*, NewtownPANow.com, January 24, 2025, available at https://newtownpanow.com/2025/01/24/sheriff-reports-progress-in-reducing-number-of-warrants/. If unfunded immigration enforcement is added to the Office's list of duties, it would be further limited in its ability to serve warrants and meet the other obligations of the Office. On information and belief, Sheriff Harran is the signatory to the unauthorized 287(g) agreement at issue here. Sheriff Harran is sued in his official capacity as County Sheriff. He is also sued in his individual capacity, as the County Board has recognized that he was not acting within his lawful powers when he executed the 287(g) agreement without approval by the County Board. *See* Ex. A at 2.

15. Defendant Bucks County ("County") is a municipality located in the Commonwealth of Pennsylvania. The County acts through its Board of Commissioners, which is vested with the corporate power of the County pursuant to 16 Pa.C.S. § 12107, and is the "governing authority" for the County and all of its departments, including the Bucks County Sheriff's Office, for the purposes of the ICA. The County has failed to take necessary and appropriate steps to stop Sheriff Harran from implementing his unlawfully-executed 287(g) agreement.

## FACTS

16. The federal government, via ICE, has a program of enlisting local law enforcement officials to perform certain immigration officer functions normally reserved for federal ICE agents,

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

including the investigation, apprehension, and detention of non-citizens. Such agreements are commonly referred to as "287(g) agreements," referencing subsection 287(g) of the Immigration and Nationality Act.

17. 287(g) agreements purport to delegate federal immigration enforcement to local law enforcement to "carry out such function at the expense of the State or political subdivision and ***to the extent consistent with State and local law***." 8 U.S.C. § 1357(g)(1) (emphasis added).

18. Under such agreements, ICE requires local officials to agree, among other things: to acquire knowledge of, and adhere to, federal immigration law, at the locality's expense, *id.* § 1357(g)(2); to spend time receiving training regarding enforcement of federal immigration law and ICE's policies and procedures, *id.*; and to submit to the supervision of the Secretary of the Department of Homeland Security, *id.*, § 1357(g)(3).

19. ICE publicizes that it operates "Enforcement and Removal Operations" under three "287(g) models." According to the ICE official website:

a. "The Jail Enforcement Model is designed to identify and process removable aliens — with criminal or pending criminal charges — who are arrested by state or local law enforcement agencies."

b. "The Task Force Model serves as a force multiplier for law enforcement agencies to enforce limited immigration authority with ICE oversight during their routine police duties."

c. "The Warrant Service Officer program allows ICE to train, certify and authorize state and local law enforcement officers to serve and execute administrative warrants on aliens in their agency's jail."

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

*Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/identify-and-arrest/287g.

20. According to ICE, it approved a "Task Force Model" agreement with the Bucks County Sheriff's Office on May 13, 2025. *See* https://www.ice.gov/doclib/about/offices/ero/287g/participatingAgencies05292025am.xlsx. On information and belief, this designation by ICE indicates that Sheriff Harran signed a form "Task Force Model" "Memorandum of Agreement" with ICE, representing that he had the authority to enter into such an agreement on behalf of the Bucks County Sheriff's Office.[5]

21. ICE's template "Task Force Model" agreement provides, in part, that U.S. Department of Homeland Security authorizes the participating law enforcement authority ("LEA") to perform certain federal "immigration officer functions" and confers certain powers purportedly possessed by federal immigration agents, including (among other things):

a. "The power to serve and execute warrants of arrest for immigration violations" (Ex. B, at 2);

b. "The power and authority to arrest without a warrant" suspected unlawful entrants into the United States (*id.*);

[5] A true and correct copy of the template "Memorandum of Agreement 287(g) Task Force Model" published by ICE is attached hereto as "Exhibit B" and available at https://www.ice.gov/doclib/about/offices/ero/287g/TFM_MOA_fillable.pdf On May 15, 2025, Plaintiffs, through counsel, filed a request under the Right-to-Know Law, 65 P.S. § 67.101 *et seq.*, with the Bucks County Sheriff's Office seeking a copy of the 287(g) agreement Sheriff Harran signed with ICE. To date, the County Sheriff's Office has not responded to the request. Because Plaintiffs have not been provided with Sheriff Harran's 287(g) agreement, Plaintiffs have relied on ICE's template "Task Force Model" agreement for their allegations regarding the substance of the 287(g) agreement signed by Sheriff Harran. A true and correct copy of the May 15, 2025 request is attached hereto as "Exhibit C."

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

c. "The power and authority to arrest without a warrant" certain offenses upon "reason to believe" the person to be arrested is in the United States illegally and is "likely to escape before a warrant can be obtained" (*id.*);

d. "The power and authority to prepare charging documents" for non-citizens "in categories established by ICE supervisors" (*id.* at 3);

e. "The Power and authority to issue immigration detainers" (*id.*);

f. "The power and authority to interrogate" any "person believed to be [a noncitizen] as to his right to be or remain in the United States" (*id.* at 2);

g. "The power and authority" to "process for immigration violations" individuals who have been arrested for state criminal offenses (*id.*);

h. "The power and authority" to detain non-citizens on behalf of ICE (*id.* at 3); and

i. The responsibility for "tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE," and issuing reports requested by ICE (*id.* at 6).

22. The participating LEA agrees to carry out these functions at its own expense, regardless of "[w]hether or not the LEA receives financial reimbursement for such costs" through federal grants or other funding. *Id.* at 4. The LEA also agrees to take all responsibility, costs, and liability for any deaths or injuries suffered by its personnel carrying out ICE's mission and agenda. *Id.* at 7. As such, Sheriff Harran's agreement with ICE, if implemented, will require the county to spend County tax dollars and personnel resources to carry out activities that are normally reserved for federal immigration enforcement agents.

23. The U.S. Department of Justice has conducted a review of local law enforcement

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

activity in other jurisdictions that entered into 287(g) agreements with ICE and found, among other things that, people of color in those jurisdictions were subject to increased profiling by local law enforcement authorities empowered to conduct warrantless searches, arrests, and detentions of those they believe to be non-citizens.

24. ICE's template "Task Force Model" agreement also provides, in relevant part, that:

a. Local law enforcement personnel are "subject to ICE direction and supervision while performing delegated immigration officer functions" (*id.* at 1; *see also id.* at 5 ("participating LEA personnel will be supervised and directed by ICE"));

b. Sheriff's Office personnel nominated and approved to act as *de facto* ICE agents under this agreement must sit for mandatory trainings (*id.* at 4);

c. Participating personnel must maintain familiarity with unspecified "DHS and ICE policies and procedures" (*id.* at 5-6); and

d. Either party to the agreement may terminate it upon written notice (*id.* at 8).

25. The form "Task Force Model" agreement also includes a representation by the signatories that they are "fully authorized to enter into this MOA." On information and belief, Sheriff Harran signed this form agreement, thus misrepresenting that he was "fully authorized" to enter into this intergovernmental cooperation agreement on behalf of the County and/or the County Sheriff's Office.

26. Sheriff Harran unilaterally decided to enter into a "Task Force Model" 287(g) agreement with ICE, purportedly on behalf of the Bucks County Sheriff's Office, and Bucks County itself, without seeking or obtaining the approval of the municipality's governing body—the Bucks County Board of Commissioners.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

27. The County Board neither applied to ICE for a 287(g) agreement, nor authorized Sheriff Harran to do so. And Sheriff Harran never asked the Board of Commissioners for authority to enter a 287(g) agreement.

28. Indeed, Sheriff Harran did not even present the proposed agreement to the Pennsylvania Local Government Commission before signing it, as is expressly required under Pennsylvania law as a "condition precedent" to obtaining a resolution approving the County's participation in an intergovernmental cooperation agreement. Specifically, the ICA requires that any "agreement between a local government and the Federal Government . . . under the provisions of this subchapter shall, prior to and as a condition precedent to enactment of an ordinance or resolution, be submitted to the [state] Local Government Commission for review and recommendation." 53 Pa.C.S. § 2314(a).

29. At the May 21, 2025, regularly scheduled meeting of the County Board, the County Solicitor confirmed on the record that Sheriff Harran had not given the County Board either the proposed or the final 287(g) agreement, which Sheriff Harran signed unilaterally and without authority.

30. Most importantly, the County Board never adopted an ordinance or resolution authorizing the Sheriff's Office to enter into a 287(g) agreement. Indeed, in response to a request for copies of any such ordinance or resolution submitted to the County pursuant to the Pennsylvania Right to Know Law, the County responded on May 8, 2025 that "there are no responsive records" to that request.[6]

[6] A true and correct copy of the May 8, 2025 email response from the County's Open Records Officer to undersigned counsel is attached hereto as "Exhibit D."

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

31. Instead, at the May 21, 2025, County Board meeting, the County Board voted to adopt a Resolution specifically disavowing any attempt by Sheriff Harran to enter into a 287(g) agreement unilaterally. In relevant part, the Resolution:

a. Reaffirmed that the County Board of Commissioners is the "sole contracting authority on behalf of the county" and its agencies (Ex. A at 1);

b. Confirmed that the County Board has not delegated its authority under Pennsylvania law to execute a 287(g) agreement (*id.*);

c. Confirmed that the County has not funded or budgeted for the tasks the Board would anticipate being carried out pursuant to a 287(g) agreement ((*id.*);

d. Confirmed that any actions taken by Sheriff Harran or other Sheriff's Office personnel in connection with a 287(g) agreement with ICE "was not approved or delegated for approval" (*id.* at 2); and

e. Formally resolved that "entering into a 287(g) agreement with ICE is not an appropriate use of Bucks County taxpayer resources given the unfunded nature of this program and the potential for liability" (*id.* at 1).

32. Nevertheless, Sheriff Harran has publicly defied the County's governing body, expressing his intent to continue as if he were authorized to bind a County agency and personnel to the terms of a 287(g) agreement, even after undersigned counsel pointed out in a May 15, 2025 letter that he does not possess such authority.

33. Absent the injunctive relief requested herein, Sheriff Harran will direct members of the Bucks County Sheriff's Office to divert (or continue diverting) time and resources, normally dedicated to local law enforcement for the benefit of County residents, to obtaining additional training on enforcement of federal immigration laws. And, upon completion of such training to

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

ICE's satisfaction, Sheriff Harran has indicated that he will deploy County Sheriff's Office staff as *de facto* ICE agents to investigate, apprehend, and detain non-citizens and alleged non-citizens, at the expense of Bucks County and its taxpayers. Such diversion of resources for federal activities has not been approved by—and, indeed, has been affirmatively disapproved by—the County Board as the relevant governing authority of the municipality in which Sheriff Harran operates.

## CLAIMS FOR RELIEF

### COUNT I
### (*Ultra Vires* Agreement in Violation of the Pennsylvania Intergovernmental Cooperation Act, against all Defendants)

34. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

35. Under the ICA, "[a] municipality ***by act of its governing body*** may . . . cooperate or agree in the exercise of any function, power or responsibility with . . . the Federal Government." 53 Pa.C.S. § 2304 (emphasis added).

36. The ICA also specifically requires that entering into intergovernmental cooperation requires "the passage of an ordinance or resolution by [the municipality's] governing body." *Id.*, § 2305(a); *see also Commonwealth v. Hlubin*, 208 A.3d 1032, 1039 (Pa. 2019) ("[A]ny agreement for intergovernmental cooperation necessitates that the governing body of the municipality must pass an ordinance with respect to said agreement."). Any such ordinance or resolution duly passed by the County Board (as the "governing body") must specifically set forth the terms and conditions of the agreement approved by the County Board, the purposes and objectives of the agreement, the powers and scope of authority delegated in the agreement, and the manner of financing the agreement. 53 Pa.C.S. § 2307.

37. The purported 287(g) agreement at issue in this case is an intergovernmental

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

agreement covered by the ICA because it is an agreement between ICE, a part of the federal Department of Homeland Security, that authorizes County Sheriff personnel to exercise federal "immigration enforcement functions." *See* 53 Pa.C.S. § 2304.

38. The County Board did not adopt any ordinance or resolution satisfying the terms of the ICA to approve or delegate approval of a 287(g) agreement between the County—or any office thereof, including the Sheriff's Office—and ICE.

39. In addition, the ICA specifically requires that any "agreement between a local government and the Federal Government . . . under the provisions of this subchapter shall, prior to and as a condition precedent to enactment of an ordinance or resolution, be submitted to the [state] Local Government Commission for review and recommendation." *Id.*, § 2314(a).

40. On information and belief, Sheriff Harran signed a purported 287(g) agreement with ICE without awaiting, or even seeking, review from the Pennsylvania Local Government Commission.

41. Neither Sheriff Harran nor anyone else submitted any proposed agreement, ordinance, resolution, or even the hint of a 287(g) agreement, to the County Board for consideration before engaging with ICE.

42. On information and belief, Sheriff Harran did not submit a proposed agreement to the County Board as required by § 2314(a).

43. On information and belief, the purported 287(g) agreement with the County Sheriff's Office is not signed by any Pennsylvania or County official other than Sheriff Harran himself and has not been approved by anyone else on behalf of the County's governing body for the purposes of the ICA.

44. Indeed, the County Board passed a resolution specifically disavowing such an

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

agreement and explicitly disclaiming Sheriff Harran's authority to enter into such an agreement.

45. On information and belief, despite the resolution of the County's governing body confirming disapproval of this agreement, Sheriff Harran has continued preparations to implement his unilateral 287(g) agreement and arrange for training of Sheriff's Office personnel to act as federal ICE agents.

46. For all the reasons stated above, Plaintiffs are entitled to declaratory and injunctive relief because Sheriff Harran has and is acting *ultra vires* in signing onto and taking steps to implement an unapproved 287(g) agreement. Plaintiffs therefore seek a declaration that the 287(g) agreement purportedly signed on behalf of the County Sheriff's Office is unlawful, in violation of the ICA, as well as an injunction to enjoin Defendants from implementing the agreement or diverting any further County resources to its implementation going forward.

**COUNT II**
**(*Ultra Vires* Agreement in Violation of**
**Article 9, Section 5 of the Pennsylvania Constitution,**
**against all Defendants)**

47. Article 9, Section 5 of the Pennsylvania Constitution authorizes local agencies to "cooperate or agree in the exercise of any function, power or responsibility with . . . the Federal government" only "by act of" the municipality's "governing body." A "municipality" under this section includes counties, like the County here. PA. CONST. Art. 9, § 14.

48. The "governing body" of the County for the purposes of entering into intergovernmental agreements is the County Board. 16 Pa.C.S. § 1122; 16 Pa.C.S. § 12107.

49. Moreover, County Commissioners are vested with the corporate power of the County, 16 Pa.C.S. § 12107, and are authorized to make contracts for the County. 16 Pa.C.S. § 12106(4).

50. Accordingly, an individual row officer, like Sheriff Harran, has no authority to bind

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

the County to an agreement to exercise any function of the federal government except through the County Board as the County's "governing body." *See*, *e.g.*, *Monastra v. Delaware Cnty. Sheriff's Off.*, 49 A.3d 556, 558 (Pa. Commw. Ct. 2012) (the sheriff's office is not a "legal entit[y] separate" from the county).

51. On information and belief, Sheriff Harran signed a purported 287(g) agreement with ICE without awaiting, or even seeking, review from the County's governing body.

52. Neither Sheriff Harran nor anyone else submitted any proposed agreement, ordinance, resolution, or even the hint of a 287(g) agreement, to the County Board for consideration before engaging with ICE.

53. On information and belief, the purported 287(g) agreement with the County Sheriff's Office is not signed by any Pennsylvania or County official other than Sheriff Harran himself and has not been approved by anyone else on behalf of the County's governing body for the purposes of the Article 9, Section 5 of the Pennsylvania Constitution.

54. On information and belief, despite the resolution of the County's governing body confirming disapproval of this agreement, Sheriff Harran has continued preparations to implement his unilateral 287(g) agreement and arrange for training of Sheriff's Office personnel to act as federal ICE agents.

55. For all the reasons stated, Plaintiffs are entitled to declaratory and injunctive relief because Sheriff Harran has and is acting *ultra vires* in signing onto and taking steps to implement an unapproved 287(g) agreement. Plaintiffs therefore seek a declaration that the 287(g) agreement purportedly signed on behalf of the Bucks County Sheriff's Office is unlawful, in violation of the Pennsylvania Constitution, as well as an injunction to enjoin Defendants from implementing the agreement or diverting any further County resources to its implementation going forward.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

**COUNT III**
**(For Declaratory Relief Pursuant to 42 Pa.C.S. §§ 7531-7541, against all Defendants)**

56. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

57. Plaintiffs are engaged in an actual controversy regarding the lawfulness of the unauthorized 287(g) agreement signed by Sheriff Harran. Plaintiffs contend that Sheriff Harran's attempt to enter into this intergovernmental cooperation agreement and dedicate County resources for federal immigration enforcement purposes is unauthorized by the relevant governing body and is therefore an *ultra vires* act in violation of the ICA and the Pennsylvania Constitution. Plaintiffs are and will continue to be injured by the unauthorized diversion of County resources. Unless addressed, this controversy is, and would likely continue to be, a source of litigation between the parties.

58. A declaration by this Court would terminate this controversy and remove an uncertainty.

59. Plaintiffs therefore seek a declaration that the unauthorized 287(g) agreement violates the ICA and the Pennsylvania Constitution.

60. Plaintiffs also seek a declaration that the 287(g) agreement signed by Sheriff Harran is *ultra vires* and violates the ICA and Pennsylvania Constitution, that such agreement is unlawful, and that the agreement is declared void *ab initio*.

**PRAYER FOR RELIEF**

WHERFORE, for all of the foregoing reasons, Plaintiffs request the following relief:

1. A declaration that the May 13, 2025, agreement entered into between Sheriff Harran and ICE is unlawful and void *ab initio*.

2. An injunction ordering the Defendants:

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

a. to terminate the Sheriff's purported 287(g) agreement with ICE; and

b. to cease immediately any implementation of the 287(g) agreement signed by Sheriff Harran, including any training of County personnel or any other use of County resources and personnel for the purposes of complying with the terms of the purported agreement; and

3. Such other relief as the Court may deem just and appropriate.

Dated: June 6, 2025

Respectfully submitted,

/s/ Stephen A. Loney, Jr.

Marielle Macher (No. 318142)
Daniel Vitek (No. 209013)
COMMUNITY JUSTICE PROJECT
118 Locust Street
Harrisburg, PA 17101
717-236-9486, ext. 214
mmacher@cjplaw.org
dvitek@cjplaw.org

Stephen A. Loney, Jr. (No. 202535)
Ariel Shapell (No. 330409)
Keith Armstrong (No. 334758)
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
215-592-1513
sloney@aclupa.org
ashapell@aclupa.org
karmstrong@aclupa.org

*Counsel for the Plaintiffs*

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# VERIFICATION

I, Diana Robinson, hereby state that the averments contained in the foregoing pleadings are true and correct to the best of my personal knowledge, information, and belief, and that I understand that the statements therein are made subject to the penalties of 18 Pa.C.S. 4904, relating to unsworn falsification to authorities.

Dated: 6/3/2025

DocuSigned by:
Diana Robinson
3BD0EAA0A6764E9...

Diana Robinson
Co-Executive Director of Make the Road States, Inc. d/b/a Make the Road Pennsylvania

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

## VERIFICATION

I, Adrienne King, hereby state that the averments contained in the foregoing pleadings are true and correct to the best of my personal knowledge, information, and belief, and that I understand that the statements therein are made subject to the penalties of 18 Pa.C.S. 4904, relating to unsworn falsification to authorities.

Dated: 6/6/2025

Signed by:
3A9CD7AB4644464...
Adrienne King
President, Bucks NAACP Bucks County Branch 2253

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# VERIFICATION

I, Rev. Kevin Jagoe, hereby state that the averments contained in the foregoing pleadings are true and correct to the best of my personal knowledge, information, and belief, and that I understand that the statements therein are made subject to the penalties of 18 Pa.C.S. 4904, relating to unsworn falsification to authorities.

Dated: 6/3/2025

Signed by:
Rev. Kevin Jagoe
18F1BBBC7A0D4ED...
Rev. Kevin Jagoe
Minister of BuxMont Unitarian Universalist Fellowship

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

## VERIFICATION

I, Juan Navia, hereby state that the averments contained in the foregoing pleadings are true and correct to the best of my personal knowledge, information, and belief, and that I understand that the statements therein are made subject to the penalties of 18 Pa.C.S. 4904, relating to unsworn falsification to authorities.

Dated: 6/5/2025

Signed by:
Juan Navia
F6554AB0D68A4A8...
Juan Navia

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# EXHIBIT A

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# A RESOLUTION OF THE COUNTY OF BUCKS, COMMONWEALTH OF PENNSYLVANIA, REGARDING BOARD OF COMMISSIONER AUTHORITY OVER CONTRACTUAL AGREEMENTS WITH THE U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**WHEREAS,** the Board of Commissioners are vested with the corporate power of the County of Bucks per 16 Pa.C.S. § 12107 and are the sole contracting authority on behalf of the County; and

**WHEREAS**, the County of Bucks follows all state and federal laws regarding cooperation with law enforcement including with the United States Immigration and Customs Enforcement Office ("ICE"); and

**WHEREAS**, the County of Bucks works cooperatively with state, local and federal agencies and authorities by providing information and access to the County's Department of Corrections facility; and

**WHEREAS**, the County of Bucks is not a Sanctuary County; and

**WHEREAS**, Section 287(g)(1) of the Immigration and Nationality Act, codified at 8 U.S.C. 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes agreements between the Secretary of Homeland Security, or her designee, and a "state or political subdivision of the state"; and

**WHEREAS**, a "political subdivision" in Pennsylvania, pursuant to the definition set forth in the Statutory Construction Act,1 Pa.C.S. § 1991, is any county, city, borough, incorporated town, township, school district, vocational school district and county institutional district; and

**WHEREAS**, the Board of Commissioners have not delegated their authority under 16 Pa.C.S. § 12107 to execute a Section 287(g) agreement; and

**WHEREAS**, 287(g) agreements with ICE are unfunded by the federal government, except for the costs of initial training; and

**WHEREAS**, ICE is under no obligation to defend the County, Sheriff's Office, or Sheriff's Deputies in the event they are sued for actions taken pursuant to a 287(g) agreement; and

**WHEREAS**, lacking the clear statutory authority or explanation from ICE regarding the Sheriff's authority or which specified tasks would be carried out under the agreement, the Commissioners lack meaningful information necessary to appropriately budget for or seek appropriate liability coverage; and

**NOW THEREFORE**, be it **RESOLVED** entering into a 287(g) agreement with ICE is not an appropriate use of Bucks County taxpayer resources given the unfunded nature of this program and the potential for liability; and

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

Any actions taken by the Sheriff, Sheriff's Deputies, or any county employee under the pretext of the 287(g) agreement is unauthorized since the 287(g) agreement was not approved or delegated for approval by the Board of Commissioners; and

County employees relying on the authority included in the 287(g) agreement do so in their individual capacity and may not possess the qualified immunity normally retained by County employees acting in an official capacity; and

**IT IS FURTHER RESOLVED** that unauthorized work could result in a personal surcharge against the employee, requiring them to reimburse the County for the wrongful or unauthorized use or expenditure of public monies in accordance with 16 Pa.C.S. § 14930.

ENACTED AND ORDAINED this 21st day of May, 2025.

**ATTEST:**

DocuSigned by:
DS
C41E9223D9F243F...
5/23/2025
Gail Humphrey, *Chief Clerk*

**BUCKS COUNTY**
**BOARD OF COMMISSIONERS**

DocuSigned by:
7751DD539436411...
Robert J. Harvie, Jr., *Chair*

DocuSigned by:
Diane Ellis-Marseglia
A199ED1587E8443...
Diane Ellis-Marseglia, LCSW, *Vice-Chair*

Gene DiGirolamo, *Commissioner*

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# EXHIBIT

# B

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# MEMORANDUM OF AGREEMENT
## 287(g) Task Force Model

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the____________________, pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), the authority to perform certain immigration enforcement functions as specified herein. The LEA represents ________________________ in the implementation and administration of this MOA. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I. PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III. POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

## IV. TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V. DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting,

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

photographing, and interviewing, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. (8 C.F.R. § 287.5(c)(6))

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI. RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor, the alien whom participating LEA personnel have determined to be removable will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII. NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

on an oral agreement of the parties but will be subject to all the requirements of this MOA.

## VIII. TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws; (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX. CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X. COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority. The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI. ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII. REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII. RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

applicability of this section to requests for release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV. LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at ______________________________. OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV. COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI. CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII. MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII. EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved for instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date:____________________________

Signature: ______________________

Name:__________________________

Title: __________________________

Agency: ______________________

**For ICE:**

Date:_______________________________

Signature:___________________________

Name:______________________________

Title: ______________________________

Agency: ____________________________

___________________________________

___________________________________

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

## APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE: Department of Homeland Security
Immigration and Customs Enforcement
Enforcement and Removal Operations
Assistant Director for Enforcement
Washington DC

For the LEA: ______________________________
______________________________
______________________________
______________________________
______________________________

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between ICE and the ______________________, hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

### 1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

A. Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

B. Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

A. The LEA Internal Affairs Division; or
B. The supervisor of any participating LEA personnel.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

**2. Review of Complaints**

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

**3. Complaint Resolution Procedures**

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of' the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

__________________________
__________________________
__________________________
__________________________
__________________________

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# EXHIBIT

# C

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

pennsylvania
OFFICE OF OPEN RECORDS

# Standard Right-to-Know Law Request Form

*Good communication is vital in the RTKL process. Complete this form thoroughly and retain a copy; it may be required if an appeal is filed. You have 15 business days to appeal after a request is denied or deemed denied.*

**SUBMITTED TO AGENCY NAME:** Bucks County Sheriff's Office (Attn: AORO)

Date of Request: 5/15/25 Submitted via: ☒ Email ☐ U.S. Mail ☐ Fax ☐ In Person

**PERSON MAKING REQUEST:**

Name: Marielle Macher Company (if applicable): Community Justice Project

Mailing Address: 118 Locust Street

City: Harrisburg State: PA Zip: 17101 Email: mmacher@cjplaw.org

Telephone: 717-236-9486 x 214 Fax: ______

How do you prefer to be contacted if the agency has questions? ☐ Telephone ☒ Email ☐ U.S. Mail

**RECORDS REQUESTED:** *Be clear and concise. Provide as much specific detail as possible, ideally including subject matter, time frame, and type of record or party names. RTKL requests should seek records, not ask questions. Requesters are not required to explain why the records are sought or the intended use of the records unless otherwise required by law. Use additional pages if necessary.*

1) The Bucks County Sheriff's Office's 287(g) agreement with U.S. Immigration and Customs Enforcement.
2) All application materials submitted by the Bucks County Sheriff's Office to ICE to participate in the 287(g) program.
3) All communications between the Bucks County Sheriff's Office and ICE regarding participating in the 287(g) program.
4) All communications between the Bucks County Sheriff's Office and its employees/agents and the Bucks County Commissioners and/or their employees/agents regarding the Bucks County Sheriff's Office's application to the 287(g) program.

**DO YOU WANT COPIES?** ☐ Yes, printed copies (*default if none are checked*)
☒ Yes, electronic copies preferred if available
☐ No, in-person inspection of records preferred (*may request copies later*)

Do you want certified copies? ☐ Yes (*may be subject to additional costs*) ☒ No

*RTKL requests may require payment or prepayment of fees. See the Official RTKL Fee Schedule for more details.*

**Please notify me if fees associated with this request will be more than ☒ $100 (or) ☐ $______.**

---

**ITEMS BELOW THIS LINE FOR AGENCY USE ONLY**

Tracking: ______ Date Received: ______ Response Due (5 bus. days): ______

30-Day Ext.? ☐ Yes ☐ No (If Yes, Final Due Date: ______) Actual Response Date: ______

Request was: ☐ Granted ☐ Partially Granted & Denied ☐ Denied Cost to Requester: $______

☐ Appropriate third parties notified and given an opportunity to object to the release of requested records.

*NOTE: In most cases, a completed RTKL request form is a public record.* Form updated Feb. 3, 2020
*More information about the RTKL is available at https://www.openrecords.pa.gov*

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

# EXHIBIT

# D

Case# 2025-04200-0 - JUDGE:44 Received at County of Bucks Prothonotary on 06/06/2025 3:18 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephen Allen Loney Jr., Esq.

**From:** JustFOIA Notification
**To:** Marielle Macher
**Cc:** openrecordsofficer@buckscounty.org
**Subject:** Bucks County - Right to Know Request RTK2025-161: Response
**Date:** Thursday, May 8, 2025 11:07:28 AM
**Attachments:** ATT00001.png

---

**RE: Records Request: Request Number: RTK2025-161 - Submitted On: 5/6/2025**

Dear Requestor/Marielle Macher,

Your request for the following pursuant to the Pennsylvania Right-To-Know Law ("RTKL"), 65 P.S. §§ 67.100 et seq., was received on 5/6/2025.

***Any and all ordinances and/or resolutions adopted by the Bucks County commissioners approving of the sheriff's office entering into a 287(g) agreement with the federal government.***

Your request is denied as there are no responsive records to your request.

You have the right to appeal the denial of information in writing to the Pennsylvania Office of Open Records, 333 Market Street, 16th Floor, Harrisburg, PA 17101-2234. If you choose to do so, it must be done within 15 business days of the mailing date of this response and your appeal must include a copy of this letter and your request.

Please be advised that this correspondence will serve to close this file with our office as permitted by law.

**Laura Riba**
Agency Open Records Officer

justfoia
an MCCI brand