IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAKE THE ROAD STATES, INC., NAACP BUCKS COUNTY BRANCH 2253, BUXMONT UNITARIAN UNIVERSALIST FELLOWSHIP, and JUAN NAVIA,<br><br>　　　　　　　Plaintiffs<br><br>v.<br><br>FREDERICK A HARRAN, individually and in his official capacity as Sheriff of Bucks County, and BUCKS COUNTY,<br><br>　　　　　　　Defendants | No. 2:25-cv-02938 |

**RESPONSE IN OPPOSITION TO EMERGENCY MOTION TO REMAND**

The district court has jurisdiction over this matter and this matter was properly removed to this Court. This matter arises under federal law, the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. (the "INA"), and involves an official acting under the direction and supervision of federal agency, the Department of Homeland Security ("DHS"), and the Attorney General of the United States.

On May 13, 2025, DHS executed an agreement with the Bucks County Sheriff's Office under Section 287(g) of the INA, 8 U.S.C. § 1357(g) (the "287(g) Agreement"). Section 287(g) empowers DHS[1] to enter into a written agreement with a local law

---

[1] While the text of Section 287(g) references the Attorney General as the party responsible for entering into the agreement, that power has been transferred to DHS. 8 U.S.C. § 1103; 8 C.F.R. § 2.1.

enforcement agency, like the Bucks County Sheriff, whereby local law enforcement may perform federal immigration enforcement functions, including, investigating, apprehending, or detaining aliens in the United States. *Arizona v. United States*, 567 U.S. 387, 408-409 (2012); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 463–64 (4th Cir. 2013) ("Local law enforcement officers may assist in federal immigration enforcement efforts under 8 U.S.C. § 1357(g)(1), which authorizes the Attorney General to enter into agreements with local law enforcement agencies that allow specific local officers to perform the functions of federal immigration officers.") Local law enforcement officers, like members of the Bucks County Sheriff's Office, who perform functions under a Section 287(g) agreement "shall be subject to the direction and supervision of the Attorney General [of the United States]." 8 U.S.C. § 1357(g)(3).

On June 9, 2025, plaintiffs filed a complaint in the Bucks County Court of Common Pleas against Frederick A. Harran, individually and in his official capacity as Sheriff of Bucks County ("Sheriff Harran") that requested a declaratory judgment declaring the 287(g) Agreement void *ab initio* and an injunction "terminat[ing] the Sheriff's purported 287(g) agreement with ICE" and "ceas[ing] immediately any implementation of the 287(g) agreement signed by Sheriff Harran, including any training of County personnel or any other use of County resources and personnel for purposes of complying with the terms of the purported agreement." ECF No. 1-1, prayer for relief. On June 9, 2025, Sheriff Harran properly removed the matter to this Court.

28 U.S.C. § 1442(a) permits removal of an action against a federal officer "or person acting under that officer. . . for or relating to any act under color of such office."

2

Sheriff Harran satisfies each of the elements needed to properly remove an action from state court under the federal officer removal statute. First, he is a person within the meaning of the statute. Second, plaintiffs' claims are based on Sheriff Harran's conduct "acting under" the United States, its agencies, or its officers. Third, plaintiffs' claims relate to actions Sheriff Harran will undertake for DHS, a federal agency, under the 287(g) Agreement. Fourth, Sheriff Harran has several colorable federal defenses to plaintiffs' claims. Therefore, the Court should deny plaintiffs' emergency motion for remand.

I. **SHERIFF HARRAN PROPERLY REMOVED THIS MATTER TO THIS FEDERAL COURT UNDER THE FEDERAL OFFICER REMOVAL STATUTE.**

The so-called federal officer removal statute is codified at 28 U.S.C. § 1442(a)(1) and states, in relevant part:

> "A civil action ... commenced in a State court and that is against ... any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. . ."

28 U.S.C. § 1442(a)(1).

"The federal officer removal statute has existed in varying forms for some two-hundred years." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). "Its central aim is protecting officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties." *Id.* (citing *Willingham v. Morgan*, 395 U.S. 402, 405–06 (1969)). "Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a

federal forum." *Id.* (quoting *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 466-67 (3d Cir. 2015), as amended (June 16, 2015) ("Defender Ass'n")). Moreover, "Section 1442(a) is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." *Id.* (quoiting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12, (2006).

To properly remove a case under the federal removal statute, the Third Circuit requires a defendant to meet four requirements:

> "(1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims."

*Id.* at 812.

This matter presents a textbook case of federal officer removal. Plaintiffs sued Sheriff Harran in state court for the express purpose of interfering with his ability to carry out immigration enforcement actions on behalf of the federal government. Sheriff Harran meets each of the elements needed to establish federal officer removal and the Court should deny plaintiffs' motion to remand.

### A. Sheriff Harran is a person within the meaning of the federal officer removal statute.

Sheriff Harran's status as a "person" under the Section 1442(a)(1) can hardly be disputed. Plaintiffs have sued Sheriff Harran individually. While Section

1442(a)(1) "does not itself define the term 'person,'" 1 U.S.C.A. § 1 defines "person" to include individuals, like Sheriff Harran. *Papp*, 842 F.3d at 812. Accordingly, Sheriff Harran meets the first element of the federal removal statue.

### B. Sheriff Harran is "acting under" DHS and the Attorney General of the United States.

The second element of the federal removal statute requires the person to be "acting under" the direction of a federal agencies or officer. "The 'acting under' requirement, like the federal removal statute overall, is to be 'liberally construe[d]' to cover actions that involve 'an effort to assist, or to help carry out, the federal supervisor's duties or tasks.'" *Id*. Sheriff Harran easily meets a liberal application of the "acting under" requirements of the federal removal statute.

This is evident from the text of the Section 287(g) and the 287(g) Agreement both of which expressly state that the Bucks County Sheriff is acting under the direction and supervision of DHS and the Attorney General. Section 287(g)(3) of the INA, 8 U.S.C. § 1357(g)(3), clearly and unequivocally states that "an officer or employee of a State or political subdivision of a State *shall be subject to the direction and supervision of the Attorney General.*" But Section 287(g) goes further and states "an officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, *shall be considered to be* **acting under** *color of Federal authority for purposes of determining liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law.*" 8 U.S.C. § 1357(g)(8) (emphasis added).

5

These clear statutory pronouncements that Sheriff Harran is "acting under" the authority of the United States is reinforced in the terms of the 287(g) Agreement itself, which makes clear that the Bucks County Sheriff officers: (1) are performing "functions as an immigration officer under the direction and supervision of the ICE[2]," (2) are "subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to the [287(g) Agreement], (3) "will be supervised and directed by ICE" in performing immigration enforcement activities, and (4) is expressly prohibited from performing "immigration officer functions except when working under the supervision and direction of ICE." 287(g) Agreement, §§ I, III, XI, ECF No. 1-2. Based on these clear pronouncements, Sheriff Harran easily meets the element of acting under the direction of a federal agency or officer.

Nonetheless, plaintiffs argue that Sheriff Harran is not acting under the United States, its agencies, or officers because "Plaintiffs claims do not relate to any action" Sheriff Harran has taken under the 287(g) Agreement. Br., ECF No. 6-5, at 16. Yet, the Third Circuit has "explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the behest of the federal officer or agency." *Papp*, 842 F.3d at 813 (quoting *Defender Ass'n*, 790 F.3d at 470). Instead, the Third Circuit holds that "[i]t is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the [defendant] and the [federal officer or agency]." *Id.*

---

[2] ICE refers to the Department of Homeland Security, Division of Immigration and Customs Enforcement.

Here, plaintiffs' complaint strikes at the heart of the relationship between Sheriff Harran and DHS, which plaintiffs seek to terminate and enjoin. Compl., ECF No. 1-1, prayer for relief, ¶¶ 1, 2(a)-(b). Therefore, however plaintiffs want to cloak their claims, they cannot deny that their end goal is a termination of the relationship between Sheriff Harran and DHS and/or ICE. Accordingly, Sheriff Harran meets the second element needed to establish federal officer removal.

### C. Plaintiffs' complaint rests on an act done "for or relating to" a federal officer or agency.

The third element that Sheriff Harran needs to meet under the federal removal statute is that there be a "nexus" between his conduct and a federal office. Because the federal removal statute requires a defendant to show that he was sued for an act "for or relating to" a federal office, the Third Circuit considers "a broad universe of acts that enable Federal officers to remove suits to Federal court." *Defender Ass'n*, 790 F.3d at 471. Accordingly, in the Third Circuit regarding the "for or relating" to requirement [of the federal removal statute] "it is sufficient for there to be a connection or association between the act in question and the federal office." *Id.*

Here, there is a sufficient connection or association between the act in question and the federal office. While plaintiffs attempt to cabin the act in question to Sheriff Harran's execution of the agreement itself and argue that "their "claims have nothing to do with performance of [any] function under the agreement, or with any action taken on behalf of the United States government while working under the agreement itself," Br., ECF No. 6-5, at 16, This argument belies averments of plaintiffs' complaint.

7

The Court need look no further than plaintiffs' alleged injuries which they claim will occur because of th the Sheriff Harran will take pursuant to the 287(g) Agreement. Plaintiffs allege that because of the 287(g) Agreement they will be subject to "racial profiling," and "warrantless interrogations, arrests, and detentions" because they are of Latino/a decent. Compl., ECF No. 1-1, ¶¶ 10-13. They claim they will have to divert resources to "advocacy and education efforts surrounding the [287(g) Agreement] and the rights of impacted Bucks County residents." *Id.*, ¶ 11. They further claim that a frustration of mission will occur if "local law enforcement authorities conduct warrantless interrogations, arrests, and detentions based on the suspicion or belief that someone is a non-citizen." *Id.*, ¶ 13. Each of these alleged harms, albeit speculative, do not exist absent some immigration enforcement conduct that Sheriff Harran takes under the 287(g) Agreement. Thus, there surely is some connection or association between plaintiffs' complained-of injuries and the conduct Sheriff Harran may undertake for DHS.

The connection between Sheriff Harran's conduct and the federal agency is buttressed by the 287(g) Agreement, which states that any immigration enforcement actions by Sheriff Harran shall only be undertaken at the direction of DHS/ICE and which expressly prohibits him from engaging in any immigration enforcement activates that DHS *does not* direct and supervise. 287(g) Agreement, ECF No. 1-2, § XI.

Plaintiffs' claims have an association or connection to Sheriff Harran's conduct for DHS. Accordingly, Sheriff Harran satisfies the third element of the federal officer statute.

8

**D. Sheriff Harran raises several colorable federal defenses.**

The final element Sheriff Harran must meet is that he has a "colorable federal defense" to plaintiffs' claims. *Papp*, 842 F.3d at 813. Regarding this element, "what matters is that a defense raises a federal question, not that a federal duty forms the defense. *Defender Ass'n*, 790 F.3d at 473. Furthermore, "a colorable defense need not be proven at this stage of the litigation due to the broad removal right the statute creates" *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 781 (E.D. Pa. 2010), it sufficient that the defense be plausible, *Id.*, or "if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Philadelphia Cmty. Dev. Coal., Inc. v. Wells*, 2025 WL 1160048, at *4 (E.D. Pa. Apr. 21, 2025).

Here, Sheriff Harran maintains at least four plausible colorable defenses to plaintiffs' claims.[3] First, plaintiffs have failed to join DHS under Fed. R. Civ. 19(a). DHS is the counterparty to the 287(g) Agreement that plaintiffs seek to terminate and enjoin its rights under the 287(g) Agreement will be impaired or impeded. Second, the Bucks County Sheriff qualifies as a "political subdivision" under federal law. Accordingly, Sheriff Harran had authority to execute the 287(g) Agreement on behalf of the Bucks County Sheriff's Office. Third, Sheriff Harran enjoins federal sovereign immunity. Fourth, in all events, plaintiffs lack standing because their complained of

---

[3] Sheriff Harran is prepared to assert each of his defenses in a motion to dismiss under Fed. R. Civ. P. 12(b). However, as Sheriff Harran understood this Court's instruction at the June 16, 2025, telephone status conference, the Court will resolve plaintiffs' motion for remand before entertaining a motion to dismiss. What follows is intended to demonstrate the plausibility of Sheriff Harran's federal defenses. It is not a full and complete argument of each defense. Each argument will be further developed in his 12(b) motion, which will be filed if the Court denies remand.

injuries are speculative and hypothetical and, therefore, they have not suffered a concrete injury in fact.

### 1. Plaintiffs' claims should be dismissed because they failed to join DHS.

Fed. R. Civ. P. 19(a)(1) states that, unless a party's participation would deprive the Court of subject matter jurisdiction, a plaintiff must join to the action any party if:

> (1) "in that [party's] absence, the court cannot accord complete relief among existing parties" or (2) "that [party's] claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Under Fed. R. Civ. P. 12(b)(7), a defendant may move to dismiss a complaint where the plaintiff, as here, fails to join a party under Rule 19.

"Courts treat clauses (1) and (2) in the disjunctive just as the rule phrases them." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). "Under Rule 19(a)(2)(i), the court must decide whether determination of the rights of those persons named as parties to the action would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation." *Id.* at 316

Here, a declaration that the 287(g) Agreement is void *ab initio* and an injunction against Sheriff Harran from further implementing it would undoubtedly impair and impede the rights of DHS and ICE. The 287(g) Agreement permits DHS to rely upon the Bucks County Sheriff to perform a broad swath of immigration enforcement actions. 287(g) Agreement, ECF No. 1-2, § V. DHS's current and future immigration

enforcement actions will be impaired and impeded if it cannot rely upon the assistance of the Bucks County Sheriff under the 287(g) Agreement.

This Court's holding in *McQuilken v. A & R Dev. Corp.*, 510 F. Supp. 797 (E.D. Pa. 1981) is instructive. There plaintiffs filed a complaint and sought to enjoin the construction of a federal low-income housing project. There this Court granted defendant's motion under Rule 12(b)(7) because plaintiffs failed to join the Department of Housing and Urban Development as a party under Rule 19, where, as here, an injunction against the named defendant would deprive HUD of construction services for a federal project.

Plaintiffs' joinder of DHS is not only feasible but it would not deprive this Court of jurisdiction. Accordingly, Sheriff Harran has a colorable defense under Rule 12(b)(7) based on plaintiffs' failure to join DHS to this action.

> **2. Plaintiffs' claims should be dismissed because they fail to state a claim upon which relief can be granted because the Bucks County Sheriff is a political subdivision under federal law.**

At core, plaintiffs' claim that the 287(g) Agreement should be declared void *ab initio* and enjoined because Sheriff Harran did not have authority to execute the agreement on behalf of the Bucks County Sheriff's Office under state law. This argument is misplaced for many reasons. First and foremost, Sheriff Harran entered into the 287(g) Agreement pursuant to a federal statute, 8 U.S.C. § 1357(g). Therefore, federal law governs the interpretation of that statute. Under federal law, Sheriff Harran qualifies as a political subdivision authorized to enter into an agreement with DHS under Section 287(g) of the INA.

"It is axiomatic that federal law governs questions involving the interpretation of a federal statute." *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1055 (3d Cir. 1993). Section 287(g) states in relevant part that "the Attorney General may enter into a written agreement with a State or political subdivision of a State." There is no dispute that Sheriff Harran did not enter into the 287(g) Agreement on behalf of the Commonwealth. Although plaintiffs suggest Sheriff Harran entered into the 287(g) Agreement on behalf of Bucks County, Compl., ECF No. 1-1, ¶ 26, the 287(g) Agreement plainly states it is between DHS and the Bucks County Sheriff only, not the County of Bucks. The Bucks County Sheriff is a political subdivision under federal law and Sheriff Harran, as the Bucks County Sheriff, was authorized to execute the agreement on its behalf.

Neither the Supreme Court nor Third Circuit have provided a definition of the term "political subdivision" as it appears in Section 287(g) of the INA. However, in interpreting other federal statutes "the Supreme Court [has] determined that federal rather than state law governs the issue whether or not an entity is a political subdivision of a State." *Crilly v. Se. Pennsylvania Transp. Auth.*, 529 F.2d 1355, 1358 (3d Cir. 1976) (citing *NLRB v. Natural Gas Utility District of Hawkins County*, 402 U.S. 600 (1970). Under the Supreme Court's holding in *Hawkins*, absent an express statutory definition to the contrary, an entity qualifies as a "political subdivision" under federal law "if it was 'either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'" *Id.* (quoting

*Hawkins*, 402 U.S. at 604-605). This definition is disjunctive meaning that an entity will qualify as a political subdivision if either prong is met. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). The Bucks County Sheriff's Office easily meets either of these prongs.

First, the Bucks County Sheriff is created directly by the state. The Pennsylvania Constitution establishes the Office of the Sheriff. Pa. Const., Art. 9, § 4. Indeed, the Office of the Sheriff was first established by the Pennsylvania Constitution of 1776 and has appeared in each subsequent constitution. Moreover, "sheriffs in Pennsylvania have statutory and non-statutory sources of authority." *Com. v. Bennett*, 827 A.2d 469, 476 (2003). "Such statutory authority includes the sheriff's traditional, common-law function of upholding the peace and enforcing the laws of the Commonwealth." *Id.* Thus, the Bucks County Sheriff is a political subdivision under the first prong of the federal definition.

Second, the Bucks County Sheriff is an office responsible to "the general electorate." Sheriff Harran, like all county Sheriffs, is an elected official. Pa. Const., Art. IX, § 4; 16 Pa.C.S.A. § 12301(a). As such, he ultimately is responsible to the electorate and can be held to account at the ballot box. Furthermore, Sheriff Harran maintains full independence in deciding how the Bucks County Sheriff's Office will fulfill its statutory and non-statutory duties. The Bucks County Board of Commissioners can no more dictate to Sheriff Harran how he fulfills these duties and obligations than it can dictate how the Judges of the Court of Common Pleas decide cases. 16 Pa.C.S.A. § 14720 ("The powers authorized by the county commissioners under this section

shall not affect the hiring, discharging and supervising rights and obligations with respect to employees as may be vested in the judges or other county officers.") Therefore, in all respects, Sheriff Harran meets the definition as found in the second prong of the federal definition of "political subdivision."

Other federal court have ruled that "the term 'political subdivision' is broad and comprehensive and denotes any division of the State made by the proper authorities thereof, acting within their constitutional powers, for the purpose of carrying out a portion of those functions of the State." *Comm'r of Internal Revenue v. Shamberg's Est.*, 144 F.2d 998, 1004 (2d Cir. 1944). For the reasons set forth above, Sheriff Harran would meet this definition of "political subdivision" as well.

Still, even if the Court declines to apply the *Hawkins* test or the other federal court definitions to determine the meaning of term "political subdivision" as it appears in Section 287(g), the Court does not reflexively apply a state law definition to it. As always, "the role of the courts in interpreting a statute is to give effect to Congress's intent." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009). Of course, state law may play a role in determining the intent of Congress. But, "[i]n the absence of a plain indication to the contrary, however, it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." *Jerome v. United States*, 318 U.S. 101, 104 (1943).

The Bucks County Sheriff is a political subdivision of the Commonwealth of Pennsylvania. The Sheriff is an officer established by the Pennsylvania Constitution and is elected by popular vote. He possesses powers and duties independent of other

14

officials and officers. And he carries out those duties without supervision or control by other county or state official, including the Bucks County Board of Commissioners. Thus, the Bucks County Sheriff is a political subdivision of the Commonwealth of Pennsylvania under federal law.

### 3. Plaintiffs' claims should be dismissed because Sheriff Harran enjoys federal sovereign immunity.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

Under Section 287(g)(8) of the INA, 8 U.S.C. § 1357(g)(8), Sheriff Harran is considered a federal official "for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal *or State law*." Thus, as a federal officer, Sheriff Harran enjoins federal sovereign immunity from all claims plaintiffs bring to enjoin Sheriff Harran's actions under the 287(g) Agreement including any brought under *State* law. Congress has not waived sovereign immunity for the plaintiffs' claims and plaintiffs have no federal statute it can point to as the source of their authority to sue Sheriff Harran. Accordingly, Sheriff Harran enjoins broad sovereign immunity and plaintiffs' claims should be dismissed.

### 4. Plaintiffs' claims should be dismissed because plaintiffs have not suffered a concrete injury in fact.

Finally, each of plaintiffs' claims is too speculative to confer a concrete injury in fact that would permit any plaintiff to maintain standing.

To satisfy the "irreducible constitutional minimum" of standing, *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022), plaintiffs must plead facts that demonstrate their alleged injuries are "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) "Allegations of 'possible future injury' are not sufficient to satisfy Article III." Reilly v. Ceridian Corp., 664 F.3d 38, 42 (3d Cir. 2011); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, (2013) ("threatened injury must be certainly impending to constitute injury in fact, and . . . [a]llegations of possible future injury are not sufficient.") Each of plaintiffs' alleged harms rests on a hypothetical threat of possible future injury.

Plaintiff, Make the Road PA, alleges that it "fear[s] racial profiling" based on "warrantless interrogations, arrests, and detentions" but only "if Sheriff Harran's 287(g) agreement goes into effect." Compl., ECF No. 1-1, ¶ 10. Plaintiff, NAACP Bucks, raises a similar claim that its members will be subjected to "racial profiling," "warrantless searches, arrest, and detention" because of the 287(g) Agreement. *Id.*, ¶ 11. Plaintiff NAACP Bucks adds that it has "divert[ed] time and resources to advocacy and education efforts surrounding the agreement" and will have to "expend additional time and resources addressing increased complaints of racial profiling and police misconduct impacting people of color in Bucks County." *Id.* Plaintiff Buxmont Unitarian Universalist Fellowship raises the same alleged injuries as NAACP Bucks but adds that its religious mission to "dismantle racism and all forms of systemic oppression" because "it will lead to the targeting and profiling of people based on

16

perceptions of their race and national origins." *Id.*, ¶ 12. Finally, individual plaintiff, Jaun Navia, claims he is injured by a "improper use" of his tax dollars and is at increased risk of racial profiling because of his "Latino surname" and will be subjected to "warrantless interrogations, arrests, and detention." *Id.*, ¶ 13.

In *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), the Supreme Court held that plaintiffs reasonably objective fear that they would be subjected to an increased risk of surveillance under the Foreign Intelligence Surveillance Act ("FISA") was too speculative to confer standing. In *Clapper*, plaintiffs were individuals who claimed "an objectively reasonable likelihood" that their communications would be intercepted under FISA at some point in the future. *Id.* at 401. The Supreme Court rejected plaintiffs fear of future harm as "too speculative to satisfy the well-established requirements that threatened injury must be 'certainly impending.'" *Id.* (citations omitted). The Court reasoned that plaintiffs fears were too speculative because they rested on a hypothetical chain of events that: (1) the government would decide to target their communications, (2) in doing so, the government would invoke its authority under FISA, (3) the government will succeed in intercepting plaintiffs' clients' communications, and (4) the communications will be sent and received by the plaintiffs. *Id.* at 410.

Plaintiffs' fears of future harm are indistinguishable from those in *Clapper*. To begin, plaintiffs do not – indeed they cannot - allege that Sheriff Harran or any member of his office has actually engaged in racial profiling, warrantless interrogatories, searches, and detention. And they do not so much as claim that any of these harms

17

is certainly impending or likely to happen. Instead, each of plaintiffs claimed injuries is based on a "speculative chain of possibilities" akin to those in *Clapper*. Id. at 414.

Under the plain language of the 287(g) Agreement, Sheriff Harran can only take those immigration enforcement actions that DHS directs and prohibits him from engaging in any unilateral immigration enforcement actions. 287(g) Agreement, ECF No. 1-2, § XI. Thus, like in Clapper, plaintiffs' alleged injuries rest on the hypothetical chain of events that (1) DHS will direct Sheriff Harran to have his deputies engage in racial profiling, warrantless searches, arrets, and detentions, (2) Sheriff Harran agrees to engage in those activities, and (3) that in in engaging in those activities plaintiffs or their members will, in fact, be the individuals subjected to racial profiling, warrantless, searches, and detention.

 Plaintiffs make no allegation that this chain of events has occurred nor so much as alleged it is certainly likely to occur.  That the 287(g) Agreement has been in place for over a month only makes plaintiffs' standing claims that much weaker. Despite being in place for over a month, plaintiffs cannot point to even one link in the hypothetical chain of events needed to demonstrate standing having occurred.

Plaintiffs' claims that they will have to divert resources in response to the 287(g) Agreement are also insufficient to confer standing. A plaintiff "cannot spend its way into standing simply by expending money to gather information …. An organization cannot manufacture its own standing in that way." *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*, 136 F.4th 456, 469 (3d Cir. 2025). Plaintiffs' devotion of resources to explain the law to their members is insufficient to confer

18

standing. Otherwise, any expenditure of money to educate an organization's members or the public at large or any trifle that a plaintiff believes frustrates its mission would be sufficient to confer an organization's standing.

Accordingly, plaintiffs lack standing.

## II. CONCLUSION

Based on the foregoing, Sheriff Harran respectfully requests that the Court deny plaintiffs' emergency motion for remand.

Respectfully submitted,

Dated:  June 20, 2025

*/s/ Walter S. Zimolong*
WALTER S. ZIMOLONG, ESQUIRE
Attorney I.D. 89151
wally@zimolonglaw.com
JAMES J. FITZPATRICK, ESQUIRE
Attorney I.D. 320497
james@zimolonglaw.com
MEAGHAN R. WAGNER, ESQUIRE
Zimolong, LLC
Attorney I.D. 203357
meaghan@zimolonglaw.com
PO Box 552
Villanova, PA 19085-0552
Tele: 215-665-0842

JOSEPH W. PIZZO, ESQUIRE
Attorney I.D. 63268
Pizzo Rudolph, LLC
3103 Hulmeville Road
Suite 200
Bensalem, PA 19020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAKE THE ROAD STATES, INC., NAACP BUCKS COUNTY BRANCH 2253, BUXMONT UNITARIAN UNIVERSALIST FELLOWSHIP, and JUAN NAVIA,<br><br>　　　　　Plaintiffs<br><br>v.<br><br>FREDERICK A HARRAN, individually and in his official capacity as Sheriff of Bucks County, and BUCKS COUNTY,<br><br>　　　　　Defendants | No. 2:25-cv-02938 |

## CERTIFICATE OF SERVICE

I hereby certify the foregoing has been filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Eastern District of Pennsylvania.

Date:　　　June 19, 2025　　　　　　　　　　　*/s/ Walter S. Zimolong*