**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | ) | |
| MAKE THE ROAD STATES, INC., | ) | No. 2:25-cv-02938 |
| NAACP BUCKS COUNTY BRANCH | ) | |
| 2253, BUXMONT UNITARIAN | ) | |
| UNIVERSALIST FELLOWSHIP, | ) | |
| and JUAN NAVIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FREDERICK A. HARRAN, | ) | |
| individually and in his official | ) | |
| capacity as Sheriff of Bucks County, | ) | |
| and BUCKS COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**<u>TEMPORARY RESTRAINING ORDER</u>**

i

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

    A.    Factual Background and Plaintiffs' Claims ................................................... 3

        1.    287(g) Agreements Background ................................................... 4

        2.    287(g) Agreements Harm Local Governments and the Public .................... 5

        3.    Defendant Harran's ultra vires 287(g) agreement with ICE ...................... 7

    B.    Procedural History ....................................................................................... 8

III.  ARGUMENT .................................................................................................. 10

    A.    Plaintiffs are Likely to Succeed on the Merits. .......................................... 10

        1.    Plaintiffs Are Likely to Prevail in Demonstrating that Defendant Harran Violated the ICA. 11

        2.    Plaintiffs Are Likely to Prevail in Demonstrating that Defendant Harran Violated Article 9, Section 5 of the Pennsylvania Constitution. ...................................... 12

    B.    A Temporary Restraining Order is Necessary to Preserve the Status Quo and Prevent Irreparable Harm. ........................................................................................ 13

    C.    Neither Defendant Harran nor the Public Interest will be Harmed by a Temporary Order Preserving the Status Quo. .......................................................................... 16

IV.   CONCLUSION ............................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Allegheny Cnty. Deputy Sheriff's Ass'n v. Com., Pa. Lab. Rels. Bd.,*
504 A.2d 437 (Pa. Commw. Ct. 1986) ........................................................ 15

*Arias Gudino v. Lowe,*
No. 1:25-CV-00571, 2025 WL 1162488 (M.D. Pa. Apr. 21, 2025)............................................ 14

*Commonwealth v. Hlubin,*
208 A.3d 1032 (Pa. 2019)........................................................................ 11

*Dish Network L.L.C. v. Laundrie,*
No. 4:15-CV-1157, 2015 WL 7180010 (M.D. Pa. Nov. 16, 2015) ............................................ 17

*Doe #1 v. Noem,*
No. 25-CV-2998 (KSH) (AME), 2025 WL 1348503 (D.N.J. May 8, 2025).............................. 17

*Great Lakes Dredge & Dock Co. v. Philly Shipyard, Inc.,*
759 F. Supp. 3d 580 (E.D. Pa. 2024) ................................................................. 10

*Hernandez v. Sessions,*
872 F.3d 976 (9th Cir. 2017) ......................................................................... 14

*Hope v. Warden York Cnty. Prison,*
956 F.3d 156 (3d Cir. 2020)......................................................................... 17

*Issa v. Sch. Dist. of Lancaster,*
847 F.3d 121 (3d Cir. 2017)......................................................................... 16

*Melendres v. Arpaio,*
695 F.3d 990 (9th Cir. 2012) ......................................................................... 17

*Monastra v. Delaware Cnty. Sheriff's Off.,*
49 A.3d 556 (Pa. Commw. Ct. 2012) ................................................................. 13

*Nken v. Holder,*
556 U.S. 418 (2009)................................................................................ 10

*Noem v. Abrego Garcia,*
145 S. Ct. 1017 (2025)............................................................................. 14

*Reilly v. City of Harrisburg,*
858 F.3d 173 (3d Cir. 2017)........................................................... 10, 11, 14

*Stein v. Com., Dep't of Transp., Bureau of Licensing*,
857 A.2d 719 (Pa. Commw. Ct. 2004) ................................................................ 12

*Susquehanna Valley All. v. Three Mile Island Nuclear Reactor*,
619 F.2d 231 (3d Cir. 1980)................................................................................. 14

*United States v. Berks Cnty., Pennsylvania*,
277 F. Supp. 2d 570 (E.D. Pa. 2003) ................................................................... 16

*Zadvydas v. Davis*,
533 U.S. 678 (2001)............................................................................................. 14

## STATUTES

16 Pa.C.S. § 1122.......................................................................................... 11, 13
16 Pa.C.S. § 12106.............................................................................................. 13
16 Pa.C.S.A. § 12107 ..................................................................................... 11, 13
42 Pa.C.S. § 2921................................................................................................ 15
42 Pa.C.S. §§ 7531-7541 ...................................................................................... 8
53 Pa.C.S. § 2302................................................................................................ 11
53 Pa.C.S. § 2304 ........................................................................................... 11, 12
53 Pa.C.S. § 2305 ........................................................................................... 11, 12
53 Pa.C.S. § 2314 ........................................................................................... 11, 12
53 Pa.C.S.A. § 2301 *et seq.*............................................................................... 2, 3
8 U.S.C. § 1357(g) .......................................................................................... 4, 16

## OTHER AUTHORITIES

Abigail F. Kolker, *The 287(g) Program: State and Local Immigration Enforcement*,
  CONGRESSIONAL RESEARCH SERVICE, August 12, 2021, available at
  https://www.congress.gov/crs-
  product/IF11898#:~:text=The%20Major%20Cities%20Chiefs%20Association,program%2
  0and%20the%20rise%20in ................................................................................. 7

ACLU Research Report, *License to Abuse: How ICE's 287(g) Program Empowers Racists
  Sheriffs and Civil Rights Violations*, AMERICAN CIVIL LIBERTIES UNION, April 26, 2022,
  available at https://www.aclu.org/publications/license-abuse-how-ices-287g-program-
  empowers-racist-sheriffs .................................................................................. 6

Audrey Singer, Jill H. Wilson, and Brooke DeRenzis, *Immigrants, Politics, and Local Response
  in Suburban Washington*, BROOKINGS INSTITUTION, 2009 at 16-17, available at
  https://www.brookings.edu/wp-content/uploads/2016/06/0225_immigration_singer.pdf ... 6

iv

*Enforcing Immigration Law: The Role of State, Tribal and Local Law Enforcement*, INTERNATIONAL ASSOCIATION OF CHIEFS OF POLICE, 2004, at 5, available at https://www.markwynn.com/trafficking/enforcing-immigration-law-the-role-of-state-tribal-and-local-le-2004.pdf ................................................................................ 7

James Pinkerton, St. John Barned-Smith, *Sheriff cuts ties with ICE program over immigration detentions*, HOUSTON CHRONICLE, February 23, 2017, available at https://www.chron.com/news/houston-texas/article/Sheriff-cuts-ties-with-ICE-program-over-10949264.php ................................................................................ 6

L.J. Wolfgang Keppley, *287(g) Agreements: A Costly Choice for Localities*, NISKANEN CENTER, October 19, 2020, available at https://www.niskanencenter.org/287g-agreements-a-costly-choice-for-localities/ ................................................................................ 6

M.C.C. Immigration Committee, *M.C.C. Immigration Committee Recommendations for Enforcement of Immigration Laws By Local Police Agencies*, MAJOR CITIES CHIEFS ASSOCIATION, June 6, 2006, available at https://www.houstontx.gov/police/pdfs/mcc_position.pdf ................................................................................ 7

*Police Chiefs From Nation's Major Cities Object To Legislative Proposals Requiring Local Police To Enforce Federal Immigration Law*, MAJOR CITIES CHIEFS ASSOCIATION, June 2013, available at https://immigrantjustice.org/sites/immigrantjustice.org/files/Major%20City%20Chiefs%20SAFE%20Act%20press%20release%202013.pdf ................................................................................ 7

Tom Sofield, *Sheriff Reports Progress In Reducing Number Of Warrants*, NEWTOWNPANOW.COM (January 24, 2025) available at https://newtownpanow.com/2025/01/24/sheriff-reports-progress-in-reducing-number-of-warrants/ ................................................................................ 15

U.S. Department of Justice, Civil Rights Division to Bill Montgomery, *Re: United States' Investigation of the Maricopa County Sheriff's Office*, U.S. DEPARTMENT OF JUSTICE, December 15, 2011, available at https://www.justice.gov/sites/default/files/crt/legacy/2011/12/15/mcso_findletter_12-15-11.pdf ................................................................................ 6

U.S. Department of Justice, Civil Rights Division to Clyde B. Albright and Chuck Kitchen, *Re: United States' Investigation of the Alamance County Sheriff's Office*, U.S. DEPARTMENT OF JUSTICE, September 18, 2012, available at https://www.justice.gov/iso/opa/resources/171201291812462488198.pdf ................................................................................ 6

## **CONSTITUTIONAL PROVISIONS**

Pa. Const. Art. 9 § 5 ................................................................................ 2, 3, 12

I.    **INTRODUCTION**

Plaintiffs Make the Road States, Inc., NAACP Bucks County Branch 2253, BuxMont Unitarian Universalist Fellowship, and Juan Navia seek emergency temporary relief from this Court to prevent Defendant Frederick A. Harran, Sheriff of Bucks County ("Defendant Harran"), from implementing an *ultra vires* 287(g) agreement and causing irreparable harm to Plaintiffs and the broader Bucks County community while the parties await a ruling on the pending Expedited Motion to Remand (Dkt. 6).

Plaintiffs filed this case in the Bucks County Court of Common Pleas on June 6, 2025, immediately followed by a motion for preliminary injunction (Dkt. 6-3), to seek an order halting implementation of Defendant Harran's illegal intergovernmental cooperation agreement. Based on Plaintiffs' understanding that a typical "Task Force Model" 287(g) agreement requires designated local law enforcement personnel to undergo at least four weeks of training, followed by background clearances, Plaintiffs filed this case three weeks after Defendant Harran signed the agreement and two weeks after the Bucks County Board of Commissioners passed a resolution confirming that they did not approve the agreement. On June 9, 2025, before the state court could act on Plaintiffs' motion for preliminary relief, Defendant Harran filed a baseless notice to remove the case to this Court (Dkt. 1). Plaintiffs immediately moved to remand this case, and because time is of the essence, sought expedited briefing and consideration of their Motion to Remand.

While expedited briefing on the Motion to Remand is now complete, Defendant Harran has been tight-lipped about whether and when he will roll out the unlawful plan to send deputies into the community to perform federal immigration enforcement activities under the auspices of the *ultra vires* 287(g) agreement. His counsel has refused to say whether training and background checks are complete. And his counsel has declined Plaintiffs' request to cease any implementation

1

of the 287(g) agreement while the Motion to Remand is pending. *See* June 25-26, 2025 Emails from Wally Zimolong, attached hereto as "Exhibit A". In the meantime, on June 25, 2025, the U.S. Attorney's Office filed a Notice of Potential Participation (Dkt. 18), asking the Court to further delay its resolution of the Expedited Motion to Remand for another two weeks. While Plaintiffs oppose that unnecessary request,[1] it further highlights the need for interim relief to preserve the status quo while the Court considers the Motion to Remand. Absent this relief, Defendant Harran's delay tactics will succeed in allowing him to do the harm alleged in the Complaint before a court of competent jurisdiction can hear Plaintiffs' preliminary injunction motion.

Plaintiffs are likely to prevail on the merits of their claims based on a straightforward application of the Pennsylvania Intergovernmental Cooperation Act ("ICA"), 53 Pa.C.S.A. § 2301 *et seq.*, and Article 9, Section 5 of the Pennsylvania Constitution. Further, Plaintiffs will be irreparably harmed if Defendant Harran is able to implement the 287(g) agreement while the parties await a decision on whether this case belongs in state or federal court. Plaintiffs include a group of: (a) nonpartisan organizations whose missions, members, and the communities they serve will be harmed if local law enforcement undertake federal immigration enforcement tasks, including warrantless searches, arrests, and detentions of County residents who are non-citizens or "believed" to be non-citizens; and (b) an individual County resident whose tax dollars would be diverted for unapproved purposes under Defendant Harran's illegal agreement, and whose liberty

---

[1] As the Notice itself notes, the United States is considering its options under a statute that authorizes the Attorney General to "attend to the interests of the United States in a suit pending in a court of the United States, ***or in the courts of a State***…." Dkt. 18 (emphasis added) (quoting 28 U.S.C. § 517). It is unnecessary for this Court to hold its decision on a motion to remand to state court, as the cited statute provides for the United States to assert its rights (if any) in either state or federal court. If this case is remanded before the Attorney General or other officers of the Department of Justice can figure out whether or how to seek involvement, they cite no reason why they would not be equally able under § 517 to attend to the interests of the federal government in state court.

would be imperiled if local law enforcement undertake federal immigration enforcement tasks, including warrantless searches, arrests, and detentions of County residents who are non-citizens or "believed" to be non-citizens. To avoid the irreparable harm that would result from Defendant Harran's statutory and constitutional violations, and to preserve the status quo while the Court considers the pending Motion to Remand, Defendant Harran must be temporarily enjoined from any implementation of the 287(g) agreement.

## II.    **BACKGROUND**

### A. **Factual Background and Plaintiffs' Claims**

The Bucks County Board of Commissioners ("County Board") has exclusive authority under Article 9, Section 5 of the Pennsylvania Constitution, the Pennsylvania ICA and other statutes to enter into agreements with the Federal government on behalf of Bucks County ("County"). In violation of these clear constitutional and statutory dictates, Defendant Harran signed a 287(g) agreement with the United States Immigration and Customs Enforcement Agency ("ICE") that purports to give ICE the authority to deputize County Sheriff personnel to perform federal immigration enforcement duties at the County's expense. *See* Memorandum of Agreement, Dkt. 1-2, attached hereto as "Exhibit B". Defendant Harran failed to inform the County before executing the 287(g) agreement, which was fully executed on May 13, 2025. *Id.* When the County Board learned of the agreement, rather than adopting an ordinance or resolution that might authorize such an agreement under Pennsylvania law, the County Board adopted a resolution *disavowing the agreement* and explicitly disclaiming Defendant Harran's authority to enter into

it.[2] Nonetheless, in defiance of the County Board's authority, Defendant Harran is proceeding to implement the *ultra vires* 287(g) agreement, which is void as a matter of Pennsylvania law. *See* Ex. A ("Sheriff Harran does **not** agree to 'cease any implementation' of his valid and lawful 287(g) Agreement with the Department of Homeland Security.") (emphasis in original).

### 1.  287(g) Agreements Background

Subsection 287(g) of the Immigration and Nationality Act authorizes the federal government, through ICE, to delegate to willing, duly authorized state and local law enforcement officers the authority to perform certain federal immigration officer functions. These agreements, commonly referred to as "287(g) agreements," delegate federal immigration enforcement to local law enforcement to "carry out such function[s of an immigration officer] at the expense of the State or political subdivision and ***to the extent consistent with State and local law***." 8 U.S.C. § 1357(g)(1) (emphasis added). 287(g) agreements are entirely voluntary on the part of local authorities: Federal law cannot "require any State or political subdivision of a State to enter into a[] [287(g)] agreement with the Attorney General."  *Id*., § 1357(g)(9).   In addition, the agreement itself is conditioned on the contracting party being "fully authorized" to enter into the agreement (Ex. B, Dkt. 1-2 at 9) and expressly grants either party to the agreement discretion to terminate it at will, upon written notice (*id*., at 8).

The particular form of agreement signed by Defendant Harran purportedly delegates to local law enforcement officers, among other functions:

- "The power to serve and execute warrants of arrest for immigration violations;" "The power and authority to arrest without a warrant" suspected unlawful entrants into the United States;

---

[2] A true and correct copy of the May 21, 2025 "RESOLUTION OF THE COUNTY OF BUCKS, COMMONWEALTH OF PENNSYLVANIA, REGARDING BOARD OF COMMISSIONER AUTHORITY OVER CONTRACTUAL AGREEMENTS WITH THE U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT" is attached hereto as "Exhibit C."

- "The power and authority to arrest without a warrant" certain offenses upon "reason to believe" the person to be arrested is in the United States illegally and is "likely to escape before a warrant can be obtained,";

- "The power and authority to prepare charging documents" for non-citizens "in categories established by ICE supervisors";

- The power and authority to issue immigration detainers;

- "The power and authority to interrogate" any "person believed to be [a noncitizen] as to his right to be or remain in the United States";

- "The power and authority" to "process for immigration violations" individuals who have been arrested for state criminal offenses;

- "The power and authority" to detain non-citizens on behalf of ICE; and

- The responsibility for tracking data for ICE relating to the 287(g) program.

Ex. B, Dkt. 1-2. The participating law enforcement agencies must carry out these functions at their own expense and accept all costs and liability for any deaths and injuries suffered by their staff in performing these duties. Ex. B, Dkt. 1-2 at 7-8.

2. *287(g) Agreements Harm Local Governments and the Public.*

287(g) agreements have been criticized by police leadership, civil liberties organizations, and community groups because they divert limited local resources from essential services and expose local governments to liability while harming public safety in immigrant communities.

Implementing 287(g) agreements has proven to be expensive for local taxpayers. For example, the Harris County, Texas Sheriff's Office ended its 287(g) agreement in 2017 after determining that it could better deploy the more than $675,000 in salaries it had been spending on federal immigration enforcement to other law enforcement duties.[3] Similarly, a Brookings

---

[3] James Pinkerton, St. John Barned-Smith, *Sheriff cuts ties with ICE program over immigration detentions*, HOUSTON    CHRONICLE,    February    23,    2017,    available    at

Institution study of Prince William County, Virginia found that the county's expected immigration enforcement plans, which included the implementation of a 287(g) agreement, would cost the county $6.4 million in its first year and could result in an increase in property taxes. [4]

Additionally, civil liberties organizations[5] and the Department of Justice[6] have found that 287(g) agreements and other forms of immigration enforcement by local LEAs can lead to increases in civil rights violations, often as the result of racial profiling. The resultant civil rights lawsuits can cost local governments millions of dollars in legal fees and damages.[7] Police leaders from across the country have repeatedly warned that attempts by the federal government to involve local law enforcement agencies in federal immigration enforcement can harm public safety.[8] Such

---

https://www.chron.com/news/houston-texas/article/Sheriff-cuts-ties-with-ICE-program-over-10949264.php.

[4] Audrey Singer, Jill H. Wilson, and Brooke DeRenzis, *Immigrants, Politics, and Local Response in Suburban Washington*, BROOKINGS INSTITUTION, 2009 at 16-17, available at https://www.brookings.edu/wp-content/uploads/2016/06/0225_immigration_singer.pdf.

[5] *See* ACLU Research Report, *License to Abuse: How ICE's 287(g) Program Empowers Racists Sheriffs and Civil Rights Violations*, AMERICAN CIVIL LIBERTIES UNION, April 26, 2022, available at https://www.aclu.org/publications/license-abuse-how-ices-287g-program-empowers-racist-sheriffs.

[6] *See* U.S. Department of Justice, Civil Rights Division to Clyde B. Albright and Chuck Kitchen, *Re: United States' Investigation of the Alamance County Sheriff's Office*, U.S. DEPARTMENT OF JUSTICE, September 18, 2012, available at https://www.justice.gov/iso/opa/resources/171201291812462488198.pdf; U.S. Department of Justice, Civil Rights Division to Bill Montgomery, *Re: United States' Investigation of the Maricopa County Sheriff's Office*, U.S. DEPARTMENT OF JUSTICE, December 15, 2011, available at https://www.justice.gov/sites/default/files/crt/legacy/2011/12/15/mcso_findletter_12-15-11.pdf.

[7] L.J. Wolfgang Keppley, *287(g) Agreements: A Costly Choice for Localities*, NISKANEN CENTER, October 19, 2020, available at https://www.niskanencenter.org/287g-agreements-a-costly-choice-for-localities/.

[8] Abigail F. Kolker, *The 287(g) Program: State and Local Immigration Enforcement*, CONGRESSIONAL RESEARCH SERVICE, August 12, 2021, available at https://www.congress.gov/crs-

efforts "undermine the trust and cooperation between police officers and immigrant communities."[9] The resulting "divide between the local police and immigrant groups would result in increased crime against immigrants and in the broader community, create a class of silent victims and eliminate the potential for assistance from immigrants in solving crimes. . . ."[10]

### 3.  Defendant Harran's ultra vires 287(g) agreement with ICE

Defendant Harran applied to participate in the 287(g) Task Force Model program on or around April 9, 2025, and ICE approved the Task Force Model agreement on May 13, 2025.  Ex. B, Dkt. 1-2.  Defendant Harran entered into this agreement unilaterally, without seeking any authority or permission from the County Board—the County's governing body under Pennsylvania law—before signing this agreement with ICE.  Compl. ¶ 26, Dkt. 1-1, attached hereto as "Exhibit D".  Indeed, Defendant Harran never so much as provided a copy of the 287(g) agreement to the County Board.  Nor did he adhere to virtually any other provisions of Pennsylvania law for entering into an intergovernmental cooperation agreement.  He failed to seek the Local Government Commission's review of the agreement and, most importantly, failed to

---

product/IF11898#:~:text=The%20Major%20Cities%20Chiefs%20Association,program%20and %20the%20rise%20in; *Police Chiefs From Nation's Major Cities Object To Legislative Proposals Requiring Local Police To Enforce Federal Immigration Law*, MAJOR CITIES CHIEFS ASSOCIATION,     June     2013,     available     at https://immigrantjustice.org/sites/immigrantjustice.org/files/Major%20City%20Chiefs%20SAFE %20Act%20press%20release%202013.pdf; M.C.C. Immigration Committee, *M.C.C. Immigration Committee Recommendations for Enforcement of Immigration Laws By Local Police Agencies*, MAJOR     CITIES     CHIEFS     ASSOCIATION,     June     6,     2006,     available     at https://www.houstontx.gov/police/pdfs/mcc_position.pdf; *Enforcing Immigration Law: The Role of State, Tribal and Local Law Enforcement*, INTERNATIONAL ASSOCIATION OF CHIEFS OF POLICE, 2004, at 5, available at https://www.markwynn.com/trafficking/enforcing-immigration-law-the-role-of-state-tribal-and-local-le-2004.pdf.

[9] *Police Chiefs From Nation's Major Cities*, *supra* note 8.

[10] *M.C.C. Immigration Committee Recommendations*, *supra* note 8.

seek or obtain a resolution or ordinance by the County Board authorizing the agreement.  Ex. D, Dkt 1-1 at ¶¶ 27-30.

In fact, completely to the contrary, after learning that Defendant Harran had unilaterally entered into a 287(g) agreement with ICE, *the County Board passed a resolution explicitly disavowing Defendant Harran's purported 287(g) agreement* and confirming that Defendant Harran's attempt to enter into the agreement was unilateral and *ultra vires.*  Ex. D, Dkt 1-1 at ¶ 31; Ex. C.  The Resolution emphasized that the County Board was "the sole contracting authority on behalf of the County" and that the County Commissioners "have not delegated their authority under 16 Pa.C.S. § 12107 to execute a Section 287(g) agreement." Ex. C at 1. The County Board made further clear that the "287(g) agreement was not approved or delegated for approval by the Board of Commissioners," and that "entering into a 287(g) agreement with ICE is not an appropriate use of Bucks County taxpayer resources given the unfunded nature of this program and the potential for liability." *Id.* at 1-2. Nonetheless, in utter defiance of the County Board's authority over intergovernmental agreements under Pennsylvania law, Defendant Harran has expressed his intent to lawlessly proceed with the 287(g) agreement.  Ex. D, Dkt. 1-1 at ¶ 32; Ex. A.

## B.  Procedural History

To prevent Defendant Harran from unlawfully carrying out his *ultra vires* 287(g) agreement with ICE, Plaintiffs filed a three-count Complaint against Defendants Harran and Bucks County on June 6, 2025 in the Bucks County Court of Common Pleas, raising claims under the Pennsylvania ICA; Article 9, § 5 of the Pennsylvania Constitution; and Pennsylvania's declaratory judgment law, 42 Pa.C.S. §§ 7531-7541.  *See* Ex. D, Dkt 1-1.  Plaintiffs also sought immediately for the Bucks County Court of Common Pleas to enter a preliminary injunction enjoining

Defendants from implementing the *ultra vires* 287(g) agreement. *See* Plaintiffs' Application for Preliminary Injunction, Dkt. 6-3.

Despite Plaintiffs' claims resting entirely on Defendant Harran's lack of authority to enter into an intergovernmental cooperation agreement under state law, Defendant Harran filed to remove this case to federal court on June 9, 2025, relying on 28 U.S.C. § 1441. *See* Notice of Removal, Dkt. 1. Defendant Harran did not obtain consent from Defendant Bucks County before filing for removal, and on June 10, 2025, counsel for Bucks County confirmed that the County does not, in fact, consent to this removal. June 10, 2025 E-mail from D. Grieser, Dkt. 6-4. Unable to sustain removal under § 1441 without such consent, Defendant Harran submitted an Amended Notice of Removal on June 10, 2025, adding a reference to 28 U.S.C. § 1442. Am. Notice of Removal, Dkt. 3. Plaintiffs filed an Expedited Motion for Remand on June 12, 2025, (Dkt. 6), to which both Defendants filed Responses on June 20, 2025 (Dkt. 14-15). On June 24, 2025, Plaintiffs submitted their Reply Memorandum of Law in support of their remand motion. Dkt. 17. On June 25, 2025, the United States filed a Notice of Potential Participation by the United States requesting that this Court defer its resolution of Plaintiffs' Motion to Remand until after July 11, 2025, the date the United States expected to complete its deliberations as to whether to participate in this case. Dkt. 18.

Out of concern that Defendant Harran would begin implementing the 287(g) agreement while Plaintiffs' Motion to Remand was pending, Plaintiffs, through counsel, requested on June

25, 2025 that Defendant Harran agree to cease from implementing the 287(g) agreement until the remand motion was decided. Ex. A. Defendant Harran's counsel refused Plaintiffs' request. *Id.*[11]

## III.    <u>ARGUMENT</u>

Plaintiffs are entitled to a temporary restraining order to preserve the status quo and prevent Defendant Harran from implementing the 287(g) agreement while the parties await decision on Plaintiffs' Expedited Motion to Remand. Such relief is warranted where Plaintiffs "demonstrate that [they] can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not). . . and that [they are] more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017) (footnotes omitted) (describing the standard for a preliminary injunction); *Great Lakes Dredge & Dock Co. v. Philly Shipyard, Inc.*, 759 F. Supp. 3d 580, 591 n.6 (E.D. Pa. 2024) ("[t]he same standard applies to temporary restraining orders and preliminary injunctions"). If these two "'most critical'" factors are met, the Court balances them alongside the possibility of harm to other interested parties from the grant or denial of preliminary relief and the public interest. *Id*. When the government is the opposing party, "[t]hese [final two] factors merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Preliminary relief is warranted if, on balance, the four factors taken together weigh in favor of such relief. *Reilly*, 858 F.3d at 179. Here, all four factors weigh in favor of issuing a temporary restraining order.

### A.  Plaintiffs are Likely to Succeed on the Merits.

---

[11] Defendant Harran's counsel previously conceded that this Court could consider a request by Plaintiffs for emergency relief. *See* June 12, 2025 Email from Wally Zimolong, attached hereto as "Exhibit E" ("…if there truly was an emergency (there is not), the ACLU can request relief from the district court").

To establish that they are likely to succeed on the merits of their claims, Plaintiffs need only show that they have a "significantly better than negligible but not necessarily more likely than not" chance of prevailing on the merits of their claims. *Reilly*, 858 F.3d at 179. Here, Plaintiffs are likely to prevail on the merits of their claims that Defendant Harran executed a 287(g) agreement in violation of the Pennsylvania ICA and Article 9, Section 5 of the Pennsylvania Constitution.

      1.  *Plaintiffs Are Likely to Prevail in Demonstrating that Defendant Harran Violated the ICA.*

Plaintiffs are likely to prevail on the merits of their claim that Defendant Harran violated the ICA by executing a 287(g) agreement with ICE without the County Board passing an ordinance or resolution approving of the agreement or submitting the agreement for review to the Pennsylvania Local Government Commission. Under the ICA, "[a] municipality by act of its governing body may . . . cooperate or agree in the exercise of any function, power or responsibility with . . . the Federal Government." 53 Pa.C.S. § 2304. Before "[a] local government may enter into intergovernmental cooperation with or delegate any functions, powers or responsibilities to another governmental unit," the local government's "governing body" must pass an ordinance or resolution. *Id.* at § 2305(a); *see also Commonwealth v. Hlubin*, 208 A.3d 1032, 1039 (Pa. 2019) ("[A]ny agreement for intergovernmental cooperation necessitates that the governing body of the municipality must pass an ordinance with respect to said agreement."). Under the ICA, "local government" includes counties. 53 Pa.C.S. § 2302. A county's "governing body" for the purposes of entering into intergovernmental agreements is the County Board of Commissioners. 16 Pa.C.S. § 1122; *see also* 16 Pa.C.S.A. § 12107.

Additionally, the ICA mandates that "prior to and as a condition precedent to enactment of an ordinance or resolution" the agreement must "be submitted to the [state] Local Government Commission for review and recommendation." 53 Pa.C.S. § 2314(a). Failure to adhere to the terms

of the ICA renders an intergovernmental agreement void. *Stein v. Com., Dep't of Transp., Bureau of Licensing*, 857 A.2d 719, 724 (Pa. Commw. Ct. 2004), *as amended* (Sept. 10, 2004).

Here, Defendant Harran violated the ICA by signing the 287(g) agreement with ICE without approval from the County Board and without submitting the agreement to the Pennsylvania Local Government Commission. The purported 287(g) agreement at issue in this case is an intergovernmental agreement covered by the ICA because it is an agreement between ICE, a part of the federal Department of Homeland Security, that authorizes County Sheriff personnel to exercise federal "immigration enforcement functions." *See* 53 Pa.C.S. § 2304.

The County Board did not see, let alone approve through ordinance or resolution, the purported 287(g) agreement prior to its execution. Instead, Defendant Harran executed the agreement himself without consulting the County Board. Indeed, the County Board subsequently passed a resolution disavowing the agreement and explicitly disclaiming Defendant Harran's authority to enter into such an agreement. Under the ICA, only the County Board could authorize the signing of a 287(g) agreement and then only through the passage of an ordinance or resolution. *See* 53 Pa.C.S. § 2304; *id.* at § 2305(a). Because the County Board did not pass such an ordinance or resolution, Defendant Harran violated the ICA when he signed the 287(g) agreement directly with ICE. Additionally, because, on information and belief, Defendant Harran signed the 287(g) agreement without first submitting the agreement for review and recommendation from the Pennsylvania Local Government Commission, Defendant Harran also violated 53 Pa.C.S. § 2314 of the ICA.

> 2.  *Plaintiffs Are Likely to Prevail in Demonstrating that Defendant Harran Violated Article 9, Section 5 of the Pennsylvania Constitution.*

For the same simple reasons, Plaintiffs are also likely to prevail on the merits of their claim that Article 9, Section 5 of the Pennsylvania Constitution barred Defendant Harran from

unilaterally entering into a 287(g) agreement. Article 9, Section 5 of the Pennsylvania Constitution authorizes local agencies to "cooperate or agree in the exercise of any function, power or responsibility with . . . the Federal government" only "by act of" the municipality's "governing body." A "municipality" under this section includes counties, whose governing body is the County Board of Commissioners. *Id.*; 16 Pa.C.S. § 1122; 16 Pa.C.S.A. § 12107. Additionally, having been vested with the corporate power of the County, *see* 16 Pa.C.S. § 12107, the County Board is the authorized contracting party for the County, *see* 16 Pa.C.S. § 12106(4). Defendant Harran, as an individual row officer, has no authority to bind the County to intergovernmental agreements on his own accord. *See*, *e.g.*, *Monastra v. Delaware Cnty. Sheriff's Off.*, 49 A.3d 556, 558 (Pa. Commw. Ct. 2012) (the sheriff's office is not a "legal entit[y] separate" from the county).

Here, Defendant Harran violated Article 9, Section 5 of the Pennsylvania Constitution by exercising intergovernmental cooperating power vested solely with the County Board to sign a 287(g) agreement that the County Board did not first approve. Defendant Harran signed a purported 287(g) agreement with ICE without awaiting, or even seeking, review from the County Board. Defendant Harran was not approved to act on behalf of the County Board for the purposes of Article 9, Section 5 of the Pennsylvania Constitution. As a result, Defendant Harran violated Article 9, Section 5 of the Pennsylvania Constitution by signing the 287(g) agreement.

Defendant Harran thus violated both the ICA and Article 9, Section 5 of the Pennsylvania Constitution by signing the 287(g) agreement without first receiving authorization from the County Board or seeking review from the Pennsylvania Local Government Commission. Plaintiffs have therefore demonstrated that they are likely to prevail on the merits.

## B. A Temporary Restraining Order is Necessary to Preserve the Status Quo and Prevent Irreparable Harm.

Absent a temporary restraining order, Plaintiffs will suffer irreparable harm. To establish irreparable harm, Plaintiffs need only show that they are "more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

Plaintiffs' interests will be immediately and irreparably harmed if a restraining order is not issued because if local law enforcement undertake federal immigration enforcement tasks, including warrantless searches, arrests, and detentions of Bucks County residents who are non-citizens or "believed" to be non-citizens, Plaintiffs, their members, and the Bucks County residents they serve will be subject to the increased and unjustified risk of harmful and humiliating interactions with law enforcement, including possible incarceration and unjustified deportation. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (describing the unlawful removal of a man to an El Salvadorian detention center); Declaration of Adrienne King at ¶ 11-13, attached hereto as "Exhibit F"; Declaration of Diana Robinson at ¶ 6-8, attached hereto as "Exhibit G"; Declaration of Kevin Jagoe at ¶ 7-10, attached hereto as "Exhibit H." The right to freedom from unreasonable government detention is fundamental. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Susquehanna Valley All. v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 245 (3d Cir. 1980) ("[P]laintiffs' . . . allegation of irreparable harm to their constitutional right to 'life and liberty' meets the irreparable harm standard."). Unlawful immigration detention is itself irreparable harm. *See, e.g.*, *Arias Gudino v. Lowe*, No. 1:25-CV-00571, 2025 WL 1162488, at *13 (M.D. Pa. Apr. 21, 2025) ("In the immigration context, unlawful detention is a sufficient irreparable injury."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (holding that plaintiffs demonstrated "irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time").

14

Additionally, Plaintiff Navia and all County residents will be irreparably harmed because they will be deprived of the local law enforcement services that Defendant Harran and his deputies would otherwise be providing if not for the unlawfully-executed 287(g) agreement. As County Sheriff, Defendant Harran is statutorily obligated to serve criminal warrants and civil process, ensure security in Bucks County courts, transport criminal defendants for court appearances, enforce court-ordered commitments of incarceration, administer court-ordered property sales, gun permitting, issuing licenses and processing applications for licenses to carry firearms, and enforce other judicial mandates from the Bucks County courts, among other responsibilities. *See, e.g.,* 42 Pa.C.S. § 2921 (process); *Allegheny Cnty. Deputy Sheriff's Ass'n v. Com., Pa. Lab. Rels. Bd.,* 504 A.2d 437, 439, 440 n.6 (Pa. Commw. Ct. 1986) (court-related responsibilities). For example, at any given time, Defendant Harran has thousands of outstanding warrants to serve. As of January 2025, Defendant Harran reportedly had 6,626 outstanding warrants, a number that had decreased by just 1,174 since 2022. Tom Sofield, *Sheriff Reports Progress In Reducing Number Of Warrants*, NEWTOWNPANOW.COM        (January        24,        2025)        available        at https://newtownpanow.com/2025/01/24/sheriff-reports-progress-in-reducing-number-of-warrants/. Allowing Defendant Harran to implement an unlawfully-executed 287(g) agreement will irreparably harm Plaintiff Navia and all County residents because it will necessarily divert resources that Defendant Harran would otherwise have devoted to his statutorily prescribed law enforcement responsibilities, reducing his taxpayer-funded services to the community as a whole.

Finally, Plaintiff Navia and all County residents will be irreparably harmed by the unlawful allocation of their tax revenues to the implementation of the 287(g) agreement. Plaintiff Navia and those County residents who voted in the most recent Bucks County Commissioners election are further harmed by Defendant Harran's effective nullification of their vote, through Defendant

Harran's usurpation of the elected County Board's authority to decide for the County whether to enter into intergovernmental cooperation agreements. *See United States v. Berks Cnty., Pennsylvania*, 277 F. Supp. 2d 570, 582 (E.D. Pa. 2003) ("The impact of the discouragement of equal participation in the democratic system cannot be redressed by money or any other remedy and constitutes irreparable harm")

### C. Neither Defendant Harran nor the Public Interest will be Harmed by a Temporary Order Preserving the Status Quo.

The remaining factors—the possibility of harm to other interested parties and the public interest—also weigh in favor of granting a temporary restraining order. A party is not harmed, for the purposes of temporary relief, when it is enjoined from engaging in unlawful activity. *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) ("the School District has no interest in continuing practices that violate" a federal law) (quotations omitted). Defendant Harran thus cannot be harmed by a temporary restraining order that requires him to abide by the ICA and Article 9, Section 5 of the Pennsylvania Constitution. This is especially true given the limited nature of the relief sought – an order temporarily maintaining the status quo pending the Court's consideration of an expedited motion that has already been briefed.

Moreover, in establishing the 287(g) program, Congress explicitly provided that 287(g) agreements could be effectuated only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1). As discussed above, Defendant Harran's execution of a 287(g) agreement without the approval of the County Board violated state statutory and constitutional law. Defendant Harran cannot be harmed by a limited order that temporarily enjoins him from conduct that violates the law.

For similar reasons, Plaintiffs' requested temporary relief is in the public interest because it upholds the rule of law. Conduct that violates the law is not in the public interest. *See, e.g., Doe*

16

*#1 v. Noem*, No. 25-CV-2998 (KSH) (AME), 2025 WL 1348503, at *14 (D.N.J. May 8, 2025) (unpublished) ("[T]here is generally no public interest in the perpetuation of unlawful agency action.") (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))); *Dish Network L.L.C. v. Laundrie*, No. 4:15-CV-1157, 2015 WL 7180010, at *3 (M.D. Pa. Nov. 16, 2015) (unpublished) ("… public interest would be served by permanently enjoining actions that violate federal law.").[12]

Finally, Plaintiffs' requested temporary relief is in the public interest because it prevents the "unauthorized use or expenditure of public monies" and the "the potential for liability" that would come from the implementation of the agreement, concerns that motivated the County Board to issue a resolution disavowing the agreement. Conversely, the public's interest in immigration enforcement would not be significantly impacted by Plaintiffs' proposed temporary relief, because that relief does not impact the federal government's ability to enforce immigration law, nor does it "'preclude local enforcement of the criminal provisions' of federal immigration law." *Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012) (quoting *Gonzales v. City of Peoria*, 722 F.2d 468, 475 (9th Cir. 1983)). Additionally, the public's interest in remaining in a 287(g) agreement is limited, given that such agreements are terminable at will. *See* Ex. B, Dkt. 1-2 at 8.

## IV.    CONCLUSION

---

[12] Even if a court of competent jurisdiction were to ultimately find that Defendant Harran had not executed an *ultra vires* agreement, the granting of Plaintiffs' requested temporary restraining order would only slightly delay the implementation of the agreement, limiting any possible injury to Defendant Harran. Such temporary relief is in line with the purpose of preliminary relief as a "stay put[ ] equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020) (quoting *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002)).

For all these reasons, Plaintiffs request that the Court grant Plaintiff's Motion and enter an Order temporarily enjoining Defendant Harran from any implementation of the 287(g) agreement, including any use of County resources and personnel for the purposes of complying with the terms of the purported agreement, pending the outcome of Plaintiffs' Expedited Motion for Remand.

Dated: June 26, 2025                           Respectfully submitted,

By: */s/ Ariel Shapell* _____

<table>
<tr><td>

Marielle Macher (No. 318142)<br>
Daniel Vitek (No. 209013)<br>
COMMUNITY JUSTICE PROJECT<br>
118 Locust Street<br>
Harrisburg, PA 17101<br>
717-236-9486<br>
mmacher@cjplaw.org<br>
dvitek@cjplaw.org

</td><td>

Ariel Shapell (No. 330409)<br>
Stephen A. Loney, Jr. (No. 202535)<br>
Keith Armstrong (No. 334758)<br>
AMERICAN CIVIL LIBERTIES UNION<br>
OF PENNSYLVANIA<br>
P.O. Box 60173<br>
Philadelphia, PA 19102<br>
215-592-1513<br>
ashapell@aclupa.org<br>
sloney@aclupa.org<br>
karmstrong@aclupa.org

<br>
*Counsel for Plaintiffs*

</td></tr>
</table>

19

<u>**CERTIFICATE OF SERVICE**</u>

I, Ariel J. Shapell, hereby certify that on the date set forth below, a true and correct copy of the foregoing was electronically filed, together with all briefs and papers in support thereof, on the Court's ECF filing system, which filing constitutes proper service upon counsel of record.

Date: June 26, 2025                    */s/ Ariel Shapell*
                                       Ariel Shapell