IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAKE THE ROAD STATES, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 25-2938 |
| FREDERICK A. HARRAN, *individually* | : | |
| *and in his official capacity as Sheriff of* | : | |
| *Bucks County*, and BUCKS COUNTY | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                 **April 22, 2026**

On June 27, 2025, this Court issued a Memorandum and Order remanding this case to the Bucks County Court of Common Pleas. The Memorandum thoroughly analyzes the merits of Defendant Frederick Harran's attempt to remove Plaintiffs' suit to federal court.[1] This Court awarded Plaintiffs attorneys' fees, as permitted under 28 U.S.C. § 1447(c), because Harran's actions and argument illustrated no objectively reasonable basis for removal. Here before the Court is Plaintiffs' petition for attorneys' fees in the amount of $35,170. Harran argues the fee award was improper and, in the alternative, the requested amount is unreasonable. Based on a review of the parties' submissions and relevant precedent, the Court will award Plaintiffs attorneys' fees, although at a reduced amount of $34,953. As such, Plaintiffs' Motion is granted in part and denied in part. Harran is directed to pay these attorneys' fees to the Plaintiffs in his individual capacity.[2]

---

[1]     While Frederick Harran was Sheriff of Bucks County at the time of the court's previous order, he has since left office. The Court takes judicial notice of this fact and will refer to him by name without his former title. Fed. R. Evid. 201.

[2]     The County of Bucks requests that the Court clarify that its June 27, 2025 Order requires Harran, in his individual capacity, to pay the costs and attorneys' fees. Dkt. No. 30. The Court grants the County's motion by directing Harran to pay the costs and fees in his individual capacity.

1

**BACKGROUND**

The June 27, 2025 Memorandum contains a lengthy discussion on the background and basis on Harran's unsuccessful attempt to remove this case to federal court. Dkt. No. 21. Harran initially removed on the basis of federal question jurisdiction under 28 U.S.C. § 1441(a), but did not comply with the procedural requirements set out in 28 U.S.C. § 1446(b)(2)(A) because Harran's co-defendants did not consent to removal. *See* Dkt. No. 21 at 4. Recognizing this deficiency, Harran amended to add in removal under 28 U.S.C. § 1442(a)(1), pertaining to federal officer removals. Dkt. No. 3.

Harran failed to meet the standard for removal under the federal officer removal statute which requires a showing that: "(1) the defendant [is] . . . a 'person' within the meaning of the statute; (2) the plaintiff's claims [are] based upon the defendant 'acting under' the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant [are] 'for or relating to' an act under color of federal office; and (4) the defendant . . . raise[s] a colorable federal defense to the plaintiff's claims." *Mohr v. Trs. Of Univ. of Pa.*, 93 F.4th 100, 104 (3d Cir. 2024) (internal citation omitted).

Harran met the first requirement because he is "a person" under the statutory definition. *Id.*; Dkt. No. 21 at 4. However, he did not show he was "acting under" the authority of the federal government by signing a Section 287(g) cooperation agreement with the U.S. Immigration and Customs Enforcement ("ICE") on his own volition, allegedly without authority to do so. *Mohr*, 93 F.4th at 104; Dkt. No. 21 at 5. Further, there was no "rela[tion] to an act under color of federal office" because the Plaintiffs' claim was exclusively related to whether Harran had state law authority to sign a cooperation agreement. *Mohr*, 93 F.4th at 104 (internal quotation marks omitted); Dkt. No. 21 at 6. Harran lodged four potential "colorable federal defenses," two of which

2

were not actually federal defenses under § 1442(a)(1), while the remaining two did not apply given the facts of the claim. *Mohr*, 93 F.4th at 104; Dkt. No. 21 at 7-8.

Recognizing that Harran lacked an objectively reasonable basis for removal, this Court awarded Plaintiffs attorneys' fees. Dkt. No. 21 at 8. Plaintiffs submitted a fee petition in the amount of $35,170.00, reflecting the contributions of four attorneys and one paralegal across nearly 70 hours. Dkt. No. 24-2 at 5.[3] Harran argues that his basis for removal was reasonable because the law is "unsettled" on the core issue of the Plaintiffs' claim. Dkt. No. 28 at 3. Further, he claims the sum requested is unreasonable and should be reduced. *Id.* at 5.

**LEGAL STANDARD**

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

"Attorneys' fees are typically assessed through the percentage-of-recovery method or through the lodestar method." *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). "The lodestar method multiplies the number of hours . . . counsel worked on a case by a reasonable hourly billing rate for such services." *Id.* "In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the

---

[3] The table summarizing Plaintiffs' submitted hours at Dkt. No. 24-2 at 5, contains an error in the calculation of hours for attorneys Loney, Shapell and Armstrong and paralegal Hoecker. But the monetary sum requested for each attorney relates back to the amounts each individual submitted to the Court in affidavits, not the inflated amount on the initial table.

The total time expended by the five individuals is 69.4 hours, not 87.4 hours as indicated in the "Time" column at Dkt. No. 24-2 at 5. The "Amount" column on the same page is properly calculated using the "Hourly Rate" column multiplied by the proper number of hours derived from each individual's affidavit. In other words, the "Time" column is incorrect, but the error has no effect on the total sum sought.

particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado v. Houstoun*, 256 F.3d 181, 184  (3d Cir. 2001) (quoting *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)) (cleaned up).

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado*, 256 F.3d at 184.  The party awarded fees has the burden of persuasion and must provide evidence including affidavits from its attorneys to support its proposed award.  *See id.*  "The fee schedule established by Community Legal Services, Inc. ('CLS') 'has been approvingly cited by the Third Circuit as being well developed and has been found . . . to be a fair reflection of the prevailing market rates in Philadelphia.'" *Id.* at 187 (quoting *Rainey v. Phila. Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993); *see also Pelzer v. City of Phila.*, 771 F. Supp. 2d 465, 470 (E.D. Pa. 2011) (citing the CLS fee schedule as a reasonable estimation of rates in the Philadelphia community).

**DISCUSSION**

In disputing this Court's fee award, Harran lodges two distinct arguments.  First, he argues that he had a reasonable basis for removal to federal court because the ultimate issue of the legality of his agreement with ICE has yet to be answered by either the Third Circuit or Pennsylvania Supreme Court.  Second, he argues that the fee petition submitted is excessive and should be reduced.  Harran separately contends any fee award should be assessed against him in his official capacity and paid for by his former office because he enjoys high public official immunity.  The Court finds none of these arguments persuasive and will address each in turn.

Harran first argues removal was not unreasonable because "the law in the area is unsettled," evidenced both by the lack of clarity on the ultimate issue from higher courts and Plaintiffs spent

nearly 90 hours contesting removal.[4]  Dkt. No. 28 at 3.  A brief discussion of the "objectively reasonable" standard from *Martin* illuminates why the awarding of fees in this instance is appropriate.

The Supreme Court in *Martin* referenced an earlier ruling, which constrained a district court's discretion in awarding fees under § 1447(c) to situations that fit "the large objectives" of the statute.  *Martin*, 545 U.S. at 140-41 (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989)).  Those objectives were "avoiding deterrence of proper removals" and fee shifting to "reduce the attractiveness" of removal without a reasonable basis.  *Id.* at 140.

Per the Court, "the appropriate test" for fee awards balances the "desire" to deter bad faith removals that prolong litigation and mount costs on an adversary with the right to remove "*when the statutory criteria are satisfied*."  *Id.* (emphasis added).  The Court emphasized that district courts "retain discretion" on whether to stray from the general rule: fees should only be awarded when removal lacks an "objectively reasonable" basis.  *Id*. at 141.  Notably, it rejected a narrower standard that would only award fees when "the unsuccessful party's position was frivolous, unreasonable, or without foundation."  *Id.* at 138-39 (internal citation and quotation marks omitted).

While lengthening litigation and imposing costs are specifically mentioned as examples of when a court may, in its discretion, decide that removal is objectively unreasonable, it is certainly not the *only* basis for awarding fees.  Just as noteworthy in this "appropriate test" is the latter part—permitting removal "when the statutory criteria are satisfied"—which Harran plainly had no reasonable basis to believe was the case.  As explained in the June 2025 Memorandum and above,

---

[4]    Harran is using an incorrect calculation of hours, but this is due to the Plaintiffs' error in its submission.  *See supra* note 3.

he failed to "satisfy" three of the four criteria for federal officer removal.  This failure came after Harran was unable to meet the statutory criteria for removal under federal question jurisdiction.

There is no indication that Harran sought removal for the purpose of delay or adding to Plaintiffs' costs.  But Harran, a county-elected official operating on his own volition, plainly had no basis to remove this case under the federal officer removal criteria.  Harran's attorneys are capable of making arguable legal points for why removal was proper—this alone does not bestow the moniker of "objectively reasonable" on their claim.  That Harran's arguments are novel and untested are presented as evidence for why arguing for removal was reasonable.  *See* Dkt. No. 28 at 3-4.  The opposite could also be true; the lack of any like case in a sister district could illustrate the objectively unreasonableness of Harran's claim.  As the awarding of fees is "left to the district court's discretion," with the touchstone of deterring "objectively unreasonable" actions for removal, this Court's decision to award fees should remain unchanged, with further analysis limited only to the reasonableness of the amount sought.  *Martin*, 545 U.S. at 139, 141.

The Court will now address the Plaintiffs' request for $35,170.00 in attorneys' fees. Harran argues that the requested $35,170.00 is unreasonable in proportion to other fee awards and in light of the time spent on the motion itself.  However, "[t]he court may not reduce an award *sua sponte*[;] rather, it can only do so in response to specific objections made by the opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005).  Harran does not identify a single time entry that it believes was improper or claim any action by an attorney or paralegal was unnecessary.  A "generalized assertion of unreasonableness" is insufficient to reduce an award, absent specific objections to the time submitted. *Jones v. Pa. State Police*, No. 16-4205, 2018 WL 2197226, at *3 (E.D. Pa. 2018), *aff'd*, 794 F. App'x 177 (3d Cir. 2019).  Nevertheless, fee requests are still "subjected to a thorough and searching analysis," where the District Court

6

must search "line[] by line" to grant an award. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001).

Despite Harran providing no specific complaint about what hours are unreasonable beyond the general objection that the fees were too high and hours too numerous, the Court must still conduct a more probing review. Thus, Plaintiffs' requested rates are first assessed for reasonableness within this geographic community. *See Maldonado*, 256 F.3d at 184 ("[A] reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."). Next, the Court will review Plaintiffs' hours and exclude "compensation for hours unreasonably expended on the litigation." *Id.* at 185.

As stated above, the CLS rates are presumed within the Third Circuit to be reasonable.[5] *See id*. at 187-88 (affirming CLS schedule as a reflection of Philadelphia market rates). Plaintiffs are clearly within the range of fees on the CLS schedule based on the legal experience for the five individuals who worked on this issue. For three of the five individuals, including the two senior attorneys, Plaintiffs submitted rates below the maximum suggested by the CLS schedule. There is nothing to indicate these rates are abnormal or fail to reflect "prevailing market rates in the relevant community." *Id.*

The remaining dispute is whether the hours were reasonably expended or excessive given the task at hand. Plaintiffs' counsel collectively spent 69.4 hours fighting Harran's motion to remove. Within those 69.4 hours, Plaintiffs filed one initial Brief, one reply Brief and conducted one status conference on the issue which required a joint briefing schedule to be agreed upon ahead of time. *See* Dkt. Nos. 6, 10, 13, 17. These four discrete tasks and deliverables were scattered

---

[5] The Court utilizes the CLS rates that came into effect on January 19, 2023. *Attorney Fees*, Cmty. Legal Serv. of Phila, https://perma.cc/9NMG-D52 (last visited Apr. 14, 2026).

across the month of June 2025.  Based on affidavits submitted, the time Plaintiffs expended can be characterized in five ways: drafting, editing, researching, internal review and coordination (time spent internally plotting strategy and finalizing documents) and external communication (time spent communicating between clients, this Court, and Harran).  The following table illustrates the time broken down into those categories:

| Category | Sum | Macher | Loney | Shapell | Armstrong | Hoecker |
|---|---|---|---|---|---|---|
| Drafting | 34.6 | 21.1 | 13.5 | 0 | 0 | 0 |
| Editing | 6.4 | 1.3 | 0.3 | 2.7 | 0 | 2.1 |
| Research | 9.9 | 8.9 | 0.5 | 0.5 | 0 | 0 |
| Internal Review & Coordination | 11.9 | 0.1 | 6.6 | 0.3 | 5.2 | 0.6 |
| External Communication | 6.6 | 0.6 | 3.5 | 1.1 | 0.5 | 0.0 |
| | | | | | | |
| Sum | 69.4 | 32 | 24.4 | 4.6 | 5.7 | 2.7 |
| Rate | | $500 | $630 | $315 | $315 | $205 |
| Amount | $35,170 | $16,000 | $15,372 | $1,449 | $1,795.50 | $553.50 |

After conducting its review, this Court will reduce the initial requested total to 68.5 hours, a reduction of 0.9 hours, cutting the total sum to $34,953.  A table to reflect the reductions is immediately below.

| Category | Sum | Macher | Loney | Shapell | Armstrong | Hoecker |
|---|---|---|---|---|---|---|
| Drafting | 34.6 | 21.1 | 13.5 | 0 | 0 | 0 |
| Editing | 6.4 | 1.3 | 0.3 | 2.7 | 0 | 2.1 |
| Research | 9.9 | 8.9 | 0.5 | 0.5 | 0 | 0 |
| Internal Review & Coordination | 11.9 | 0.1 | 6.6 | 0.3 | 4.9 | 0 |
| External Communication | 5.7 | 0.6 | 3.5 | 1.1 | 0.5 | 0.0 |
| | | | | | | |
| Sum | 68.5 | 32 | 24.4 | 4.6 | 5.4 | 2.1 |
| Rate | | $500 | $630 | $315 | $315 | $205 |
| Amount | $34,953 | $16,000 | $15,372 | $1,449 | $1,701.00 | $430.50 |

In reviewing the legitimacy of Plaintiffs' submissions, it is most helpful to further distill the five classifications into three distinct responsibilities: (1) research, drafting and editing; (2) internal review and coordination; and (3) external communication.

The lion's share of this time and the total time, 50.9 hours out of 69.4 sought, was spent researching, drafting and editing the two briefs submitted opposing removal. This sum reflects time purely spent drafting and researching, along with reviewing and inputting edits from other attorneys reviewing the documents. As one would imagine with the high stakes of this claim, nearly the entire burden of research, drafting and editing was borne by the more senior attorneys Macher and Loney, with minor support from Shapell, Armstrong and Hoecker.

In *Maldonado*, the Third Circuit took issue with a claim for over 500 hours of time researching and briefing a "single uncomplicated issue" that the parties had already produced briefs on and argued before the District Court. 256 F.3d at 186. By contrast, Plaintiffs here were working on an expedited timeline because of the pendency of state level claims. Further, unlike in *Maldonado*, as Harran stated "[t]he issues in this matter are complicated and novel and neither the Third Circuit nor the Pennsylvania Supreme Court has definitively ruled" on the subject. Dkt. No. 28 at 3.

Given the tight timeframe for action and lack of relevant precedent to guide the parties in their briefing, it seems reasonable that Macher and Loney spent 45.6 hours to produce the two briefs, with 5.3 hours of assistance divided between the remaining three individuals. "Our principal concern is whether the time claimed is reasonable for the services performed," and this Court is satisfied that 50.9 hours expended to produce two briefs in three weeks meets that reasonableness threshold. *Maldonado*, 256 F.3d at 185; *see Doe v. Schorn*, No. 23-3252, 2024

WL 1258654, at *9 (E.D. Pa. 2024) (finding 30.15 hours reasonable for researching and writing two motions).

"Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Maldonado*, 256 F.3d at 184 (quoting *Public Int. Rsch. Grp. of N.J., Inc.*, 51 F.3d at 1188). In contrast to the substantive legal work spent writing and researching, "filing- and scheduling-related tasks and communications are administrative in nature, and as such, the fees incurred on those tasks are not appropriately shifted" to an adversary. *Pa. State Lodge Fraternal Ord. of Police v. Twp. of Springfield*, No. 23-332, 2024 WL 1219960, at *5 (E.D. Pa. 2024); *see also Nitkin v. Main Line Health*, No. 20-4825, 2022 WL 2651968, at *8 (E.D. Pa. 2022) ("[F]iling-related tasks . . . are administrative tasks for which [the claimant] should not be compensated.").

There are entries for attorney Armstrong and paralegal Hoecker which reflect time spent filing or performing administrative tasks. Accordingly, attorney Armstrong's time will be reduced by 0.3 hours and paralegal Hocker's time will be reduced by 0.6 hours, as reflected in the table below:

| Entry Date | Entry Description | Individual | Time |
|---|---|---|---|
| 6/12/25 | Filing Motion to Remand Papers in the Eastern District of Pennsylvania | Hoecker | 0.3 |
| 6/24/25 | Filing Reply Brief in Support of Motion for Remand in the Eastern District of Pennsylvania | Hoecker | 0.3 |
| 6/12/25 | Review and finalize Entry of Appearance to the Eastern District of Pennsylvania | Armstrong | 0.3 |

Beyond these minor issues, the time spent in this "internal review and coordination" category is marked by hours planning for the status conference and working internally to collaborate on a strategy for briefing. "A reasonable fee for hours spent preparing for a legal

argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court." *Maldonado*, 256 F.3d at 187. Subtracting out the 0.9 hours above, the four attorneys spent 11.0 hours preparing and strategizing for briefing and conference, separate from the time spent writing and drafting the briefs.

Again, absent any specific allegations that the time spent on this task was unreasonable, this Court is inclined to accept this amount of time as reasonable. As noted, briefing occurred on an expedited timeframe, which suggests a heightened need for coordination to ensure that time and tasks were properly allocated among the team of attorneys. Save for the reductions noted above, Plaintiffs are entitled to 11.0 hours of billable time related to this category of work.

The Court next turns to external communication, which captures the time Plaintiffs' counsel spent communicating with this Court in conference, with Defense counsel, and with their clients. 3.0 hours of the 6.6 total hours on "external communications" are captured in attorney Loney's June 16, 2025 entry titled "prepare for and conduct court conference re removal and motion to remand," which could arguably be characterized under "Internal Communication and Review." Dkt. No. 24-4 at 5. Regardless of where it is taxonomized, that time is certainly "reasonable for the services performed." *Maldonado*, 256 F.3d at 185. The remaining 3.6 hours are divided between the three attorneys, who all participated in the conference and had some degree of responsibility in coordinating with external parties. Again, nothing suggests this time is out of the ordinary or unreasonable, and as such, this time should be adopted as submitted.

Harran separately argues that he should not have to pay these attorneys' fees directly because as a sheriff, at the time of removal, he is entitled to high public official immunity under Pennsylvania state law. He is incorrect. "In Pennsylvania high public official immunity is a long-

11

standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (Pa. 2017); *see Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001) ("It has long been held that high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties."). Harran cannot assert high public official immunity to avoid paying attorneys' fees here.

First, state law-based immunity plainly would not apply to this court regarding a federal attorneys' fees issue. "[T]he doctrine of high official immunity under Pennsylvania law" only "shields high officials from *state law claims*" not federal law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 243-44 (3d Cir. 2006) (emphasis added). These attorneys' fees are being imposed under the authority of a federal statute based on the actions Harran took in federal court. The Court has not identified an instance where a purely state law-based immunity prohibited the application of a federal statute or imposition of costs in federal court.[6]

Second, even if Pennsylvania high public official immunity did somehow apply to constrain this court's federal authority, this type of immunity would not apply in the instant case. The Plaintiffs' underlying action seeks declaratory and injunctive relief which would constrain Harran from committing an allegedly illegal act. Pls.' Compl. 19-20, Dkt. No. 1-1. Pennsylvania precedent does not apply high public official immunity (or most other immunities) to suits

---

[6]    The context where immunity limits federal relief and actions toward state and local officials emerges in Eleventh Amendment sovereign immunity and federal immunity jurisprudence such as qualified immunity. *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000); *Hill*, 455 F.3d at 244.

requesting purely prohibitive injunctive relief.[7]  So Harran does not enjoy high public official immunity in this case.[8]

Additionally, when a claim is based on injunctive relief, attorneys' fees are not barred by immunity principles.  *Cf. Inmates of B–Block v. Jeffes*, 483 A.2d 569, 572 (Pa. Commw. Ct. 1984) ("[I]mmunity does not preclude an assessment of costs against the Commonwealth where the underlying suit was not barred.").  This is because attorneys' fees are considered ancillary to prospective injunctive relief and not retrospective damages relief which can be barred by various forms of immunity.  *Missouri v. Jenkins*, 491 U.S. 274, 279 (1989) ("[I]t must be accepted as settled that an award of attorney's fees [is] ancillary to prospective relief."); *cf. Maine v. Thiboutot*, 448 U.S. 1, 9 n.7 (1980) ("[F]ee awards are part of costs which have traditionally been awarded without regard for the State's Eleventh Amendment immunity." (internal citation and quotation marks omitted)).  As a result, high official immunity would not protect Harran from paying attorneys' fees and costs.  Because high official immunity is not appliable in this case for a variety of reasons, Harran must pay the attorneys' fees individually.

---

[7]      *Durham*, 772 A.2d at 69 ("It has long been held that high public officials are immune from suits seeking *damages* for actions taken or statements made in the course of their official duties." (emphasis added)); *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952) ("Absolute privilege . . . exempts a high public official from all civil suits for *damages*" (emphasis added)); *Stone v. Martin*, No. 1270 C.D. 2018, 2020 WL 1934383, at *4 n.8 (Pa. Commw. Ct. Apr. 22, 2020) ("The [plaintiffs] correctly observe that [high public official] immunity does not bar a request for prohibitive injunctive relief."); *Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Phila.*, 267 A.3d 531, 551 (Pa. Commw. Ct. 2021) ("[S]uits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity." (quoting *Fawber v. Cohen*, 532 A.2d 429, 433-34 (Pa. 1987))).

[8]      The state court came to the same conclusion on remand.  Op. 16, *Make the Road States Inc. v. Harran*, No. 2025-04200 (C.P. Bucks Cnty. Jan. 9, 2026) (Dkt. No. 85) ("[Plaintiffs] sought preliminary injunction and declaratory relief rather than monetary damages, so immunity does not shield [] Harran from the immediate suit.").

13

**CONCLUSION**

Accordingly, the Court will grant in part Plaintiffs' Motion for Attorneys' Fees and award them $34,953 to be paid by Harran individually.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.
